REBECCA L. FOOT, Appellant, *v.* THE ÆTNA LIFE INS. CO. OF HARTFORD, CONNECTICUT, Respondent.

The rule that an insurance contract is to be construed most strongly against the insurer is to be resorted to only where the language or some of the terms of the contract, after the use of such helps as are proper, remain of doubtful import.

By the terms of an application for a policy of life insurance, it was declared to be the agreement and understanding that the statements therein should form the basis of the contract, and that any "untrue or fraudulent answers" would render the policy void. It was stated in the policy that if the proposal, answers and declarations thereby made part and parcel of the policy should be found in any respect "false or fraudulent" the policy would be void. In an action upon the policy, *held*, that if the statements in the application which were made warranties were untrue, this avoided the policy, although they were made in good faith and with a belief of their truth; that the word "false" in the policy was used in the sense of untrue, and did not limit the effect of the warranty to a statement intentionally untrue.

Also, *held*, that knowledge on the part of the agent of defendant who procured the insurance, at the time the application was made, of the true state of facts, did not alter or affect the contract.

It is only where it is perfectly plain that no possible state of proof applicable to the issue in a case will entitle the respondent to a recovery, that an appellate court in reversing a judgment is justified in refusing a new trial. It is not sufficient that it is highly improbable that the defeated party can succeed upon the new trial; it must appear that he certainly cannot.

(Argued September 25, 1874; decided January term, 1875.)

Appeal from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order reversing a judgment entered in favor of plaintiff upon the verdict of a jury, and ordering judgment absolute in favor of the defendant.

This action was upon a policy of insurance upon the life of Maj. Alfred Foot, plaintiff's husband.

On the 24th day of January, 1867, the plaintiff, by her husband, made an application to the defendant for a policy of insurance upon his life. The application contained certain questions to be answered as to the health and condition of the husband. The eleventh question was as follows: "Has the party ever had any of the following diseases; if so, how long, and to what extent: * * * spitting of blood, consumption, * * * diseases of the lungs, etc.?" To this question the answer was "No." The thirteenth question was as follows: "Has the party had, during the last seven years, any severe disease; if so, state the particulars and the name of the attending physician?" To this question the answer was "No." After the questions and answers the application contained the following: "It is hereby declared that the above are correct and true answers to the foregoing questions; and it is understood and agreed by the undersigned that the above statements shall form the basis of the contract of insurance; and, also, that any untrue or fraudulent answers, any suppression of facts in regard to the party's health, etc., shall render the policy null and void." The policy contained the following clause: "It is also understood and agreed to be the true intent and meaning hereof that if the proposed answers and declarations made by the said A. Foot, and bearing date the 24th day of January, 1867, and which are hereby made part and parcel of this policy, as fully as if herein recited, and upon the faith of which this agreement is made, shall be found, in any respect, false or fraudulent, then, and in such case, this policy shall be null and void."

Foot entered the army of the United States in 1861, and

in 1864 was twice wounded. After a partial recovery, he was ordered to Arizona for duty, and sailed from New York for his destination in November, 1865. While upon the ocean, the seventh day out, he had an attack of spitting blood, which continued ten days, and reduced him very much, disabling him from duty for several weeks. He reached California, and, while at Drum Barracks, in March, 1866, he had another hemorrhage and attack of spitting blood, which lasted about ten days, and confined him to his bed several weeks. Neither of these hemorrhages was preceded or followed by any cough. He returned from California in June, 1866, and from that time until the last of August, 1868, his health continued good. At the latter date he had another attack of hemorrhage; and he died of consumption September 1, 1869.

Upon the trial, the judge permitted the plaintiff, under objection and exception on the part of the defendant, to prove facts tending to show that Foot did not intentionally or fraudulently make any misrepresentations, or give untrue answers to the questions; and he charged the jury, substantially, that his answers did not vitiate the policy, unless knowingly untrue. To this charge defendant excepted. Defendant requested the judge to charge the jury that " if the party had, previous to his application, contrary to his answer to question number eleven, the disease of spitting blood, the disease of consumption, or disease of the lungs, or either of them, prior to the application, the policy is void." Also, that " if the party had, during the last seven years preceding the application, contrary to his answer to question number thirteen, a severe disease, to wit, spitting of blood, consumption, or disease of the lungs, the existence of either of them during the last seven years prior to the application rendered the policy void." The judge refused to charge either of the requests, and defendant excepted.

*Samuel A. Foot* for the appellant. The General Term erred in reviewing and deciding questions of fact. (*Parker*

v. *Jervis*, 3 Keyes, 271; *Wright* v. *Hunter*, 46 N. Y., 410; *Freir* v. *Jackson*, 8 J. R., 406; *Jackson* v. *Cadwell*, 1 Cow., 622; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407; *Whiteside* v. *Jackson*, 1 Wend., 418; *Borst* v. *Spellman*, 4 Comst., 284.) Conditions and provisions in policies of insurance, if of doubtful meaning, are to be construed against the insurer. (*Hoffman* v. *Ætna F. Ins. Co.*, 32 N. Y., 405, 413, 414; *Garrison* v. *Hampden F. Ins. Co*, 50 Me., 580; *Campbell* v. *N. E. L. Ins. Co.*, 98 Mass., 291; *Daniels* v. *H. R. Ins. Co.*, 12 Cush., 416, 424; *Jeff. Ins. Co.* v. *Cotheal*, 7 Wend., 80.) To render the policy void, the answers must have been intentionally and knowingly untrue. (*Blood* v. *How. F. Ins. Co.*, 12 Cush., 472; 3 B. & S., 368; *Daniel* v. *Hud. F. Ins. Co.*, 12 Cush. [Mass.], 416; *Hoffman* v. *Ætna F. Ins. Co.*, 32 N. Y., 405; *Garrison* v. *Hampden F. Ins. Co.*, 50 Me., 580; *Rowley* v. *Empire Ins. Co.*, 36 N. Y., 550.)

*Samuel Hand* for the appellant. The answers in the application for insurance were warranties, and the falsity of any of them would invalidate the policy. (*Jennings* v. *Chen. M. Ins. Co.*, 2 Den., 75; *Chaffee* v. *Cat. Co. Mut. Ins. Co.*, 18 N. Y., 38; *Brown* v. *Cat. Co. Mut. Ins. Co.*, id., 385; *Lowell* v. *Mid. Mut. F. Ins. Co.*, 8 Cush., 127; *Chase* v. *Ham. F. Ins. Co.*, 20 N. Y., 52; *Leroy* v. *Market F. Ins. Co.*, 39 id., 90; *Burritt* v. *Sara. Co. Mut. F. Ins. Co.*, 5 Hill, 188; *Smith* v. *Ætna L. Ins. Co.*, 49 N. Y., 211; 2 Phil. on Ins., § 648.) It did not matter whether the circumstances warranted were material or not, or that the party knew the answer was false when made. (*Blackhurst* v. *Cockell*, 3 T. R., 360; *Anderson* v. *Fitzgerald*, 24 E. L. and Eq., 2; Bliss on Ins., § 37; *Vose* v. *E. H. and L. Ins. Co.*, 6 Cush., 42; *Geach* v. *Ingall*, 14 M. & W., 95; 1 Phil. on Ins., §§ 542, 543, 649, 651, 902; *Duckett* v. *Williams*, 2 Cr. & M., 348; *Chase* v. *Ham. Ins. Co.*, 20 N. Y., 57.) If the agent who filled out the application and acted as medical examiner had known at the time of the falsity of the answers, defendant would not be affected. (*Brown* v. *Cat. Co. M. Ins. Co.*, 18

N. Y., 385; *Vose* v. *E. H. and L. Ins. Co.*, 6 Cush., 42; *Lowell* v. *Mid. Mut. F. Ins. Co.*, 8 id., 127; Story's Eq. Jur., § 140, pp. 170, 171; *Hiern* v. *Niel*, 13 Ves. Jr., 121; *Fulton Bk.* v. *N. Y. and S. Canal Co.*, 4 Paige, 136; *Nat. Bk.* v. *Norton*, 1 Hill, 578, 579; *Bk. of U. S.* v. *Davis*, 2 id., 461; *Miller* v. *Ill. C. R. R. Co.*, 24 Barb., 331; *Prest., etc.*, v. *Corner*, 37 N. Y., 323.) Defendant, by accepting the application and issuing the policy under it, did not ratify the acts of the agent in the premises. (Story on Ag., § 243; *Seymour* v. *Wyckoff*, 10 N. Y., 213; *Nixon* v. *Palmer*, 8 id., 398; *Graham* v. *Gale*, 7 Cow., 739; *Brass* v. *Worth*, 40 Barb., 654; *Smith* v. *Tracy*, 36 N. Y., 79; *Roach* v. *Colt*, 1 E. D. S., 75; *Hays* v. *Stone*, 7 Hill, 128.)

Earl, C. Parties to insurance contracts have the right to make their own bargains as in other cases. An insurance policy is to be construed like other contracts with the view to arrive at the intent of the parties. The rule that an insurance policy shall be construed most strongly against the insurer, can be resorted to only when, after using such helps as are proper to arrive at the intent of the parties, some of the language used, or some phrase inserted in the policy, is of doubtful import, in which case the rule should be applied because the insurer wrote the policy. Here it is clear that both parties intended that the policy and the application or proposal should constitute the contract between them. They so expressly agreed, and it is so stated both in the policy and the proposal. By the express language of the policy, the proposal, and the answers and declarations therein made are made part of the policy. Hence, the two papers must be construed as if they were embraced in one. All the representations of the assured contained in the policy by being written therein, or incorporated therein by reference to the proposal, are warranties, and must be substantially true, or the policy will be void. (*Jennings* v. *Chenango Mut. Ins. Co.*, 2 Denio, 75; *Chaffee* v. *Cattaraugus County Mut. Ins. Co.*, 18 N. Y., 376; *Chase* v. *Hamilton Ins. Co.*, 20 id., 52;

*Le Roy* v. *Market Fire Ins. Co.*, 39 id., 90; 1 Phillips on Ins., § 891, etc.) It matters not whether the representations are material or not. The parties have made them material by inserting them; and it matters not if the party insured made the untrue statements innocently, believing them to be true. (*Duckett* v. *Williams*, 2 Cromp. & M., 348; *Lowell* v. *Middlesex Mutual Fire Ins. Co.*, 8 Cush., 129–133; *Vose* v. *Eagle Life and Health Ins. Co.*, 6 id., 42.) Nor does it matter if the agent who procured the insurance for the company knew the true state of the facts. The policy embodies the contract, and must speak for itself. (*Jennings* v. *Chenango County Mutual Ins. Co.*; *Chase* v. *Hamilton Ins. Co.*; *Lowell* v. *Middlesex Mutual Fire Ins. Co.*, *supra*.) Hence, if we should treat Dr. Buehler, upon whose medical examination the policy was issued, as the agent of the defendant, the fact that he had, at the time, knowledge of Maj. Foot's prior condition, obtained before while not acting for the defendant, it could make no difference with defendant's liability. The plaintiff in this action must stand by the answers of her husband as embraced in the contract, however innocently they may have been made. To render the policy void on account of the untrue answers, it was wholly unnecessary that the proposal or the policy should contain a clause expressly providing for a forfeiture on that account. The mere fact that the statements are warranties, and untrue, vitiates the policy.

But it is claimed on the part of the appellant, that because the policy incorporates into itself the proposal and the answers and declarations therein made, and provides that the policy shall be void if they are false or fraudulent, therefore it is not sufficient to avoid the policy that they are simply untrue, but to have that effect they must be knowingly and intentionally so. The proposal is made part of the policy, and in that the words "untrue or fraudulent" are used. I have no doubt that the words "false or fraudulent," written in the policy, are used in the same sense. Effect should be given to both the words, false and fraudulent. If they both mean

statements made intentionally and knowingly to deceive, then it was unnecessary to use both, and nothing is added to the sense by the use of both. The word false is sometimes used in the sense of fraudulent, and sometimes in the sense of untrue. The following are instances of the latter use of the word : In *Alston* v. *Mech. Mut. Ins. Co.* (4 Hill, 334), Chancellor Walworth says: " And if the representations be false ·in any material point, even through mistake, it will avoid the policy." In *Carpenter* v. *Am. Ins. Co.* (1 Story, 62), Judge Story says : " A false representation of a material fact is, according to well settled principles, sufficient to avoid a policy of insurance underwritten on faith thereof, whether the false representations be by mistake or design." In *Mutual Life Ins. Co.* v. *Wager* (27 Barb., 364), Judge Sutherland says: " A false representation will avoid the policy if the actual risk was greater than it would have been had the representations been true. In such action it would not have been necessary for the insurers to show that the misrepresentation or concealment was intentional or fraudulent."

Having provided in the proposal which is made part of the policy against both untrue and fraudulent statements, how can we infer that, in the policy based upon the proposal, it was the intention to cut down the force of these words, and confine the avoidance of the policy to statements fraudulently made ? Having embraced the statements made in the proposal in the policy, and thus made them warranties so that if untrue the policy would be avoided, it is not inferable that by the insertion of the words false and fraudulent it was the intention to save the policy from statements simply untrue. These words were inserted for abundant caution. They were intended to cover statements untrue as well as such as were colorably true, but fraudulent in fact. I am, therefore, of opinion that the judge at the trial term erred in his charge as made, and his refusal to charge the jury as requested, and that the judgment was properly reversed at the General Term. There were, doubtless, other errors committed upon the trial, but most, if not all of them, resulted

from the erroneous theory upon which the judge tried and submitted the case. They may be avoided upon a new trial.

The General Term should not, upon the reversal, have ordered absolute judgment for the defendant. Such a course is rarely proper when there is a reversal at General Term upon exceptions taken at the trial. This was an appeal to the General Term from a judgment entered upon a verdict. Upon such an appeal, the General Term could only consider the exceptions, and all the evidence given may not have been before it. It could not, therefore, certainly know what might be made to appear upon a new trial. It is only when the appellate court can see that no possible state of proof, applicable to the issues in the case, will entitle the respondent to a recovery that a new trial should be denied to him upon a reversal of his judgment. (*Edmonston* v. *McLoud*, 16 N. Y., 543.) In *Griffin* v. *Marquardt* (17 N. Y., 28), Judge COMSTOCK says : " It is proper to say, and to say it with great distinctness, as the opinion of this court, that extreme caution ought to be exercised in refusing new trials where judgments are reversed. The discretion of the appellate court should be exercised in that direction only in cases where it is entirely plain, either from the pleadings or from the very nature of the controversy, that the party against whom the reversal is pronounced cannot prevail in the suit." It is not sufficient to refuse a new trial, that it is highly improbable that the party defeated upon the appeal can succeed upon the new trial. It must appear that he certainly cannot. This we cannot say in this case, both from the nature of the controversy and from the fact that we may not have before us the whole case made by the plaintiff upon the trial.

It follows that the judgment must be reversed, and new trial granted, costs to abide event.

All concur.

Judgment reversed.