# N. Y. SUPERIOR COURT.

## JOSEPHINE S. DOUGLAS and JENNIE S. TWEED agt. THE KNICKERBOCKER LIFE INSURANCE COMPANY.

*Life insurance — Action in equity to compel issuance of paid-up policy — Defense violation of condition that party insured should not travel upon the seas or pass beyond the civilized settlements of the United States.*

The policy was issued and accepted upon the express condition enumerated therein, that if the party whose life was thereby insured should, without the written consent of the company previously obtained, travel upon the seas or pass beyond the civilized settlements within the United States, &c., &c., the policy should be void, null and of no effect. The insured, after having on the 4th of December, 1875, escaped from the custody of the sheriff of the city and county of New York, was, during the year 1876, found in the port of Vigo, in Spain, where he had gone without defendant's consent, from whence he was subsequently brought back to New York as a prisoner:

*Held,* that upon this state of facts an important condition upon which the policy had been issued and accepted was violated, and that in consequence thereof the contract between the parties came to an end by its own limitation, unless continued in force by some other provision or by defendant's waiver of the violation.

Equity will not relieve against such violation, because the policy states that written permits will be granted on reasonable terms for persons insured in said company to make voyages to any foreign country. The granting of such a permit upon terms to be prescribed by the company involves a new bargain to be entered into by the parties to the original contract, which the court cannot make for them. The company has a right to determine each application for a permit upon its own facts, and with special reference to the additional risk to be incurred.

Upon the back of the policy the following further stipulation appears: "It being understood and agreed that if, after the receipt by this company of not less than three or more annual premiums this policy should cease in consequence of the non-payment of premiums, then, upon a surrender of the same, the company will issue a new policy for the full

Douglas agt. Knickerbocker Life Insurance Co.

value acquired under the old one, subject to any notes that. may have been received on account of premiums, &c., &c." This stipulation appears at the foot of all the conditions, and was indorsed upon the policy in red.ink, and separately signed by the president and secretary of the company:

*Held*, that this clause is available to the person whose life is insured, as well as to the beneficiaries. It is not a separate contract, because standing by itself, nor is it capable of separate execution or enforcement. There was no contract with the beneficiaries separate and apart from that made with the person whose life was insured, nor did they acquire any vested rights after the payment of the third annual premium, which could not be divested by a subsequent breach of a condition not covered by the saving clause, nor were they entitled to notice of the election of the company to treat the policy as at an end in case of a violation of any of its conditions not embraced in the clause last referred to.

*Held*, further, that, regarding the plaintiffs exclusively in the light of beneficiaries, they having chosen the insured as the subject of risk under certain conditions which they agreed to accept, he having violated them, his breach is their breach, and by such breach the policy, by its express terms, became null and void.

*Held*, also, that the policy ceased to exist by the insured's travels upon the ocean to reach Spain; and hence, on the first day of October, 1876, there was no policy in force on which the premium could be paid. It had become null and void, and it could only be revived by the mutual agreement of the parties. No such agreement having been made, and there being no waiver of the violation, the plaintiffs could not, by electing on the 1st of October, 1876, to omit to pay the premium due on that day, impose upon the defendants the liability to issue a new policy for eight-tenths of the sum originally insured.

*Special Term, May*, 1878.

ACTION in equity to compel defendant to issue to plaintiffs a paid-up policy for $8,000 as for eight-tenths of sum insured by policy issued by defendant on the 1st day of October, 1868, in the sum of $10,000.

*Sewell & Pierce*, attorneys, and *Robert Sewell* and *A. B. Conger*, of counsel, for plaintiffs.

*Johnson, Cantine & Deming*, attorneys, and *A. J. Vanderpoel*, of counsel, for defendant.

Douglas agt. Knickerbocker Life Insurance Co.

FREEDMAN, J. — By the terms of the policy, and in consideration of the premium of $1,180.90 paid, and of the annual payment of a like sum, to be paid on or before the first day of October, at noon, in every year during the continuance of the policy, the defendant assured the life of William M. Tweed, of New York, in the amount of $10,000, for the benefit of the plaintiffs, his daughters, share and share alike; and, in case of the death of either or both, the portion belonging to the deceased child or children to pass to Mary J. Tweed, the wife of said William M. Tweed. In case of the death of William M. Tweed before the 3d day of April, 1878, the defendant stipulated to pay the amount insured to the bene-. ficiaries as stated, but in case he should be alive on that day, the amount was to be paid to him, whereupon the policy should be void.

This policy was issued and accepted upon the express condition enumerated therein, that if the party whose life was thereby insured should, without the written consent of the company previously obtained, travel upon the seas (except in voyages between coastwise ports of the United States) or should pass beyond the civilized settlements in the United States (excepting into the settled limits of the British Provinces of the two Canadas, Nova Scotia or New Brunswick), the policy should be void, null, and of no effect.

It is upon an alleged violation of this clause that the defense mainly rests, for the defendant has shown by testimony which was not controverted, that William M. Tweed, after having on the 4th of December, 1875, escaped from the custody of the sheriff of the city and county of New York, was during the year 1876 found in the port of Vigo, in Spain, a distance of about 3,500 miles from New York, where he had gone without defendant's consent, and that on the 26th of September, 1876, he was, at said port, placed on board the United States man-of-war Franklin, and subsequently brought back to New York on said vessel as a prisoner.

Upon this state of facts there can be no doubt that an

important condition upon which the policy had been issued and accepted, was violated and that in consequence thereof the contract between the parties came to an end by its own limitation, unless continued in force by some other provision or by defendant's waiver of the violation.

There is no evidence of any waiver. It has been argued, however, that because the policy states that written permits signed by the president or secretary of the company will be granted on reasonable terms for persons insured in said company to make voyages to any foreign country, equity will relieve against the violation. The answer to this proposition is that the granting of such a permit upon terms to be prescribed by the company involves a new bargain to be entered into by the parties to the original contract, which the court cannot make for them. As matter of law the company has a right to determine each application for a permit upon its own facts and with special reference to the additional risk to be incurred (*Rainsford* agt. *The Royal Ins. Co.*, 1 *Jones & Sp.*, 453; *affirmed*, 52 *N. Y.*, 626).

Nor is there any evidence showing upon what terms Tweed would or could have obtained a permit if he had applied for one, or that the company had or has a uniform rule upon the subject. Under these circumstances the company cannot at this late day be adjudged liable to execute a permit *nunc pro tunc* upon such terms as to the court may seem reasonable.

Thus, in *Hathaway* agt. *Trenton Mutual Life and Fire Insurance Company* (11 *Cush.* [*Mass.*], 448) the condition of the policy was that it should be void and of no effect, if the assured, without defendant's consent previously obtained and indorsed upon it, should pass beyond the settled limits of the United States. In returning from California he did go beyond those limits, and the court held that the policy was thereby rendered invalid and the defendant discharged from all liability upon it, unless the company did give its consent that he might do so. It then appeared that the assured had permission to make one voyage to California and home in a

first-rate vessel round Cape Horn or by Vera Cruz; but it also appearing that the assured had returned home by way of Panama and Chagres, the court held, that the consent given was not a general license, but a carefully defined and restricted permission; that in giving it, the company had a right to fix its own terms and to circumscribe it within such limitations as it deemed expedient; that, as given, it restricted the assured to the two routes named; and that having chosen to return by neither, but by a third, not embraced in the consent, there was a breach of the condition of the policy which rendered the policy void, although there was then no usually traveled route by way of Vera Cruz, and although he may have returned the shortest and safest way.

In *Nightingale* agt. *The State Mutual Life Insurance Company of Worcester* (5 *R. I.* [2 *Ames*], 38) the policy fixed the limits of constant residence of the assured within certain states of the United States, with the privilege to travel or be in others upon certain conditions. One of these conditions was that if the assured should, without the consent of the company first had and indorsed upon the policy, go into any of the states prohibited between the first day of July and the fifteenth day of October of any year and remain therein more than five days, the policy should become void and all payments thereon should be forfeited to the company. The policy further provided that "in case of forfeiture from the above or any other cause the party interested shall have the benefit of such equitable adjustment as may from time to time be provided by the board of directors." The assured went into one of the prohibited states, in violation of the provisions stated, and after remaining therein ten days, was attacked by apoplexy and died. The proof showed that such violation did not contribute to the death, and it was claimed that the policy upon its face held out an express promise of an equitable adjustment in case of forfeiture from the alleged or any other cause. But the court held that it had no power to interfere with the action of the directors or to dispense

with or qualify the forfeiture of the policy according to its own notions of what would be an equitable adjustment under the circumstances.

The policy in the case at bar also provides that the omission to pay the annual premium on or before 12 o'clock, at noon, on the day or days mentioned therein for the payment thereof, shall then and thereafter cause said policy to be void, without notice to any party or parties interested therein. One of the conditions printed upon the back of the policy reiterates this requirement, and by still another clause contained in the body of the policy it is provided, that if it shall be found that the conditions printed on the back thereof have been violated, the policy shall be void and of no effect, either to the insured, insurer, or any party to whom this policy may be assigned, and all the premiums paid thereon shall be forfeited to the company.

But, upon the back of the policy, the following further stipulation appears :

" It being understood and agreed, that if, after the receipt by 'this company of not less than three or more annual premiums, this policy should cease in consequence of the non-payment of premiums, then, upon a surrender of the same, the company will issue a new policy for the full value acquired under the old one, subject to any notes that may have been received on account of premiums, that is to say, if payments for three years have been made, it will issue a policy for three-tenths of the sum originally insured, if for four years, four-tenths, and in the same proportion for any number of payments, without subjecting the assured to any subsequent charge, except the interest annually on all premium notes remaining unpaid on this policy."

From the fact that this stipulation appears at the foot of all the conditions, and that it was indorsed upon the policy in red ink and separately signed by the president and secretary of the defendant, the learned counsel for the plaintiffs very ingeniously argued that the contract of life insurance

Douglas agt. Knickerbocker Life Insurance Co.

under consideration was in part with the person whose life was insured and in part with the beneficiaries named in the policy; and that, as between them and the company, it was divisible so that, after the payment of the third annual premium, the contract could not be terminated by the company for a violation, by the person whose life was insured, of any of the conditions, except on notice to the beneficiaries. No such notice having been given, it was further argued that the policy continued in force up to the 1st day of October, 1876; and that on that day the beneficiaries were in a position to elect to omit the payment of the premium falling due upon that day, and to demand a new policy for the full value acquired under the old one, without further charge, there being no outstanding notes for premiums given by them or the insured.

To test the soundness of this argument, I have made quite an extensive and critical examination of all the conditions of the contract of insurance and their bearing upon one another, as well as their collective force and effect. Some, as already stated, are contained in the body of the policy, and the remainder, partly by way of reiteration and partly by way of explanation and qualification, are printed under the general title of "conditions of insurance" upon the back of the instrument. But the latter are referred to in the body of the policy as constituting part of the same, and hence all the conditions are to be treated as if they appeared in their appropriate places in the body of the instrument. Considered with reference to their general legal effect, some bear the character of conditions precedent, or active conditions, the performance of which is essential to give a right of action, while others, being of a restrictive character, declare the instances on the occurrence of which the policy was to become void. The breach of the latter discharges the liability when once created by the performance of the active conditions. Upon the foot of all is the saving clause in favor of the continuance of the policy after the receipt of at least three annual premiums.

But this clause is available to the person whose life is insured, as well as to the beneficiaries. It is not a separate contract, because, standing by itself, it has not sufficient meaning, nor is it capable of separate execution or enforcement. It was manifestly designed to be a part of the original contract since it refers to the policy in express language, and by its express language it was to bind the company only in case the policy ceased in consequence of the non-payment of premiums.

Time and space do not permit me to discuss the other conditions more fully than I have done. It is sufficient to say that nothing can be found in them, or any of them, which warrants the conclusion that there was a contract with the beneficiaries separate and apart from that made with the person whose life was insured, or that they acquired any vested rights after the payment of the third annual premium, which could not be divested by a subsequent breach of a condition not covered by the saving clause, or that they were entitled to notice of the election of the company to treat the policy as at an end in case of a violation of any of its conditions not embraced in the clause last referred to. The policy and all the conditions contained in and upon it, together constitute the contract, and only one contract, upon which the rights and liabilities of all parties depend.

Taken as a whole, therefore, and the only safe rule after all is to always take the whole contract as written, subtracting nothing therefrom, adding nothing thereto, the general plan and scheme of the policy and the plain intent of the contracting parties was, that if, after three annual payments had been made, the policy should lapse in consequence of the non-payment of premiums falling due, the company should not be in a position to enforce the absolute forfeiture of all the premiums received, provided all the other conditions, upon the observance of which the life of the policy depended, had been complied with. But in case any of these other conditions had been violated, the policy should become null and void without notice to any of the parties interested. The lia-

bility of the company could become absolute only on the happening of a certain event, and not even then, unless the assured had done certain acts and had refrained from doing certain others. What he was required to do and what he was prohibited from doing were conditions of liability agreed to by all parties in interest, and no court has the right to impose other or additional ones. Such conditions are essential parts of the contract. They qualify the entire contract, and upon a violation of any of the prohibitory clauses, the contract, by its terms, becomes *ipso facto* void (*Evans* agt. *United States Life Ins. Co.*, 6 *N. Y. Supreme Ct. R.* [*T. & C.*], 331; *Rainsford* agt. *The Royal Ins. Co.*, 33 *N. Y. Superior Ct. R.* [ 1 *J. & S.*], 453; *affirmed*, 52 *N. Y.*, 626; *Ritzler* agt. *The World Mut. Life Ins. Co.*, 42 *N. Y. Superior Ct. R.* [10 *J. & S.*], 409; *Foot* agt. *The Ætna Life Ins. Co.*, 61 *N. Y.*, 571).

Plaintiffs sue as assignees of Tweed, and as beneficiaries named in the policy. According to the proofs, the eight annual premiums that were paid, were paid by them. It may be a great hardship for them to find that the whole of these payments were made in vain, and that the policy which is labeled as an endowment policy wholly failed to secure for them any endowment whatever. Indeed, to call a policy like the one in question an endowment policy is a misnomer. But the court can only carry into effect the contract as they made it, and as thus made they stand in no better position than Tweed would have stood if he had brought the action. The courts cannot make contracts for the parties, nor alter or vary those made by them. The law, it is true, frequently supplies, by its implications, the want of express agreements between the parties. But it never overcomes, by its implications, the express provisions of the parties. If these are illegal, the law avoids them. If they are legal, it yields to them, and does not put in their stead what it would have put if they had been silent. The plaintiffs, even if they be regarded exclusively in the light of beneficiaries, chose Tweed as the subject

of risk under certain conditions which they agreed to accept. He violated them, and his breach is their breach. By such breach the policy by its express terms became null and void.

The policy having come to an end in consequence of Tweed's flight to Spain without the consent of the company, it is not necessary to examine whether or not his return to New York on board the Franklin, which made the journey by a circuitous route partly by steam and partly under sail, violated another provision of the policy which required that the party whose life was insured when traveling should proceed by the usual mode of conveyance for travelers.

In any aspect of the case the policy ceased to exist by Tweed's travels upon the ocean to reach Spain, and hence on the first day of October, 1876, there was no policy in force on which the premium could be paid. It had become null and void, and it could only be revived by the mutual agreement of the parties. No such agreement having been made, and there being no waiver of the violation, the plaintiffs could not, by electing on the 1st of October, 1876, to omit to pay the premium due on that day, impose upon the defendant the liability to issue a new policy for eight-tenths of the sum originally insured. Even if it could be done, the new policy would be in the same form as the old one, and consequently it would be broken the moment it was given.

The defendant is entitled to judgment, dismissing the complaint with costs.