## FALSE STATEMENTS IN APPLICATIONS FOR FRATERNAL INSURANCE.

Court of Appeals for Cuyahoga County.

SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD
v. BRIDGET GALLAGHER.

Decided, June 14, 1913.

*Fraternal Insurance—False Designation of a Dependent as Beneficiary
—Renders Policy Wholly Invalid—No Recovery May be Had There-
on by Blood Relatives.*

Where the provisions of the constitution of a fraternal beneficiary or-
ganization are by force of statutory law imported into and be-
come an integral part of contracts of insurance issued in accord-
ance therewith, and one of these provisions makes of no effect a
certificate of insurance based upon an application which contains
a false statement, the naming by the insured as his beneficiary of
one falsely designated as a dependent renders the policy wholly
void and of no effect *ab initio;* and an action by the mother of the
insured, brought after his death on a policy so issued, can not be
maintained, and all sums paid by the insured in procuring and
maintaining such insurance are forfeited and lapse into the fund
provided for such contingencies by the laws of the order.

*White, Johnson & Cannon,* for plaintiff in error.
*E. P. Strong* and *Carl P. Schuler,* contra.

GRANT, J.; WINCH, J., and MEALS, J., concur.

Error to the court of common pleas.

The prayer of the petition in error in this cause is for a re-
versal of the judgment of the court of common pleas of this
county in favor of the defendant in error, plaintiff below.

Although as to position the parties here are in the reverse
order of that held by them in the trial court, we shall hereafter,
for the sake of clearness, designate them as they were there in
this respect.

For substance, the allegations of error in the petition are in-
cluded in the first, namely, that no evidence should have gone

to the jury at all, and that upon the pleadings and admitted facts there should have been no recovery by the plaintiff.

Those facts, so far as they are material here, are as follows:

The defendant is a fraternal beneficiary organization, incorporated under the laws of Nebraska. It has no capital stock, and its activities are exerted wholly for the mutual benefit of its members and their families. It is a corporation not for profit, and it has a lodge system; it proceeds under certain ritualistic forms and its mode of government is representative. It has a fund out of which benefits may be paid to the beneficiaries of such of its deceased members as have complied with the conditions imposed by its constitution, rules regulations and laws.

In evidence of the right to participate in the benefits mentioned, the organization issues certificates entitling those beneficiaries who come within their provisions to recover their proper amounts. The application for the benefit insurance in each case, and also the constitution and laws of the order, become and are a part of the contract evidenced by the certificate.

The following parts of the constitution and laws referred to are essential to an understanding of this case:

"Section 3. The objects of the order shall be to combine white male persons of sound bodily health, exemplary habits and good moral character, between the ages of eighteen and fifty-two years, into a secret, fraternal, beneficiary and benevolent order; provide funds for their relief; comfort the sick and cheer the unfortunate by attentive ministrations in time of sorrow and distress; promote fraternal love and unity, create a fund from which, on reasonable and satisfactory proof of death of a beneficiary member, who has complied with all the requirements of the order, there shall be paid a sum not to exceed three thousand dollars ($3,000) *to the person or persons named in his certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents brothers, sisters or other blood relations, or to persons dependent upon the member.*

"*The name or names of the beneficiary or beneficiaries shall be written in every beneficiary certificate issued.* In case such benefits are payable to one of the relations named herein, who shall, at the time of the death of a member, be also deceased and new designation has been made as hereinafter provided during life, the benefits shall be due and payable to the member's next

living relation in the order named in this section; if there be no such relative surviving, then said benefits shall be forfeited to and remain in the beneficiary fund.''

Section 60 of the Constitution provides:

''Section 60. The following conditions shall be made a part of every beneficiary certificate and shall be binding on both member and order:

''First. This certificate is issued in consideration of the representations, warranties and agreements made by the person named herein in his application to become a member, and in consideration of the payment made when introduced in prescribed form. * * *

''Fourth. * * * If any of the statements or declarations in the application for membership and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void and of no effect, and all moneys which shall have been paid and all rights and benefits which have accrued on account of this certificate shall be absolutely forfeited without notice or service.''

Section 66 of the constitution provides among other things:

''If the statements or declarations in his application for membership shall be in any respect untrue, his certificate shall be null and void and of no effect, and all money which shall have been paid, and all rights and benefits which may have accrued on account of his certificate shall be absolutely forfeited without notice or service.''

Section 69 provides:

''No officer, employee, or agent of the sovereign camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws, then in force or thereafter enacted.''

The certificate sued upon in this action was issued to Patrick F. McGinty. The named beneficiary in it was James F. Gaul. The relationship of the latter to the insurance sought to be affected is stated in McGinty's application, as follows:

"I hereby direct that the amount of the beneficiary fund, to which my beneficiaries may be entitled at my death, shall be paid to James F. Gaul, related to me as dependent. If said beneficiary should not survive me, same shall be paid to my nearest surviving relative in the order named in the constitution and laws of the order."

The application also contained the following language:

"I hereby consent and agree that this application, consisting of two pages, *to each of which I have attached my signature,* the examining physician's report and all the provisions of the constitution and laws of the order, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not.

"I hereby waive the attaching of copies thereof to said certificate; and I further waive the provisions of all statutory laws and court decisions in relation thereto. * * * I hereby certify, agree and warrant that all the statements, representations and answers made by me in this application, consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not; and I agree that any untrue statements or answers made by me in this application * * * intentional or otherwise * * * or if I fail to comply with the laws, rules and usuages of the order, now in force or hereafter adopted, my beneficiary certificate shall become void and all rights of any person or persons thereunder, shall be forfeited."

This application is signed by McGinty at the foot of each page.

The certificate issued on this application states:

"This certificate is isued and accepted subject to all of the conditions on the back hereof and subject to all of the laws, rules and regulations of this Fraternity now in force or that may hereafter be enacted, and shall be null and void if said sovereign does not comply with all of the laws, rules and regulations of the Sovereign Camp of the Woodmen of the World, that are now in force or which may hereafter be enacted, and with the by-laws of the camp of which he is a member."

To this certificate is attached this statement:

"I read the above certificate No. 21056 of the Sovereign Camp of the Woodmen of the World, *and the conditions therein,* and hereby agree to and accept the same as a member of Camp No. 42, state of Ohio, this 22d day of October, 1906, and warrant that I am in good health at this time and that all the requirements of Section 58 of the constitution and laws of the order have been complied with."

This is signed by Mr. McGinty, and witnessed by the Clerk of the Camp. On the back of this certificate is the following:

"CONDITIONS REFERRED TO AND MADE A PART OF THIS CERTIFICATE.

"1st. This certificate is issued in consideration of the representations, agreements and warranties made by the person named herein, in his application to become a member;  *  *  *
"The foregoing provisions are hereby made a part of the consideration for and are conditions precedent to the payment. of benefits under this certificate.  *  *  *
"If any of the statements or declarations in the application for membership and upon the faith of which this certificate was issued, shall be found in any respect untrue, this certificate shall be null and void and of no effect, and all moneys which shall have been paid, and all rights and benefits which have occrued on account of this certificate shall be absolutely forfeited without notice or service."

Gaul, the person named in the application and also in the certificate issued upon it, was not a dependent and the statement to that effect was false. The plaintiff, Bridget Gallagher, is, literally, a stranger-in-law to the contract she sues on—her name appearing nowhere in it, either as a party to it or as a designated person to share in its benefits.

The claim of the plaintiff is that notwithstanding this, she being the mother of McGinty may recover upon the certificate, McGinty being now dead.

On the contrary, the defendant contends that the false statement avoids the obligations of the certificate, defeats all right of recovery upon it, and causes the amount that would otherwise be coming to a proper beneficiary, and all sums paid in procuring and maintaining the insurance, to be forfeited and to lapse into the fund provided for such contingencies by the laws of the order.

The foregoing facts and the statement of the issue between the parties are not disputed.

Over the objection of the defendant, testimony was permitted to be introduced and the case was submitted to the jury by the trial court. À verdict for the plaintiff was had for the full amount of the benefit named in the certificate, with interest, and a motion for a new trial being overruled, judgment was entered accordingly.

The same issue that was before the court below is before us. If the contention of the defendant was right, there was no case to go to the jury and it should not have been submitted to the jury at all. .

With some reluctance, but in the fulfilment of our duty, we have concluded that the law of Ohio has been sufficiently declared to settle this question and that it does settle it, and that we may not in this case depart from the somewhat narrow and rigid path marked out for us.

This conclusion renders it unnecessary for us to examine the formidable array of authorities, so industriously marshalled from other states in the briefs, and so ably discussed at the bar.

The General Code of Ohio, Section 9467, provides:

"The payment of death benefits shall be confined to the family, heirs, relatives by blood, marriage or legal adoption, affianced husband or affianced wife, *or to a person or persons dependent on the member.*"

Section 9469 says:

"Every certificate issued by the association  *  *  *  shall provide that the certificate, the charter or articles of association, the Constitution and laws of the association, and the application for membership, medical examination signed by the applicant, shall constitute the contract between the association and the member."

We are not, therefore, left in any doubt as to the fact that the application and those portions of the constitution which we have quoted, are by force of positive law imported into, and have become integral parts of the contract of insurance evidenced by the certificate sued on, to be construed and applied

and given binding force, whenever they are applicable, as in other contracts, unless their application is limited or modified by some other and controlling countervailing enactment. *German Fire Ins. Co.* v. *Schill*, 69 O. S., 136, 139; *West et al* v. *Ins. Co.*, 27 O. S., 1; *Traveler's Ins. Co.* v. *Myers*, 62 O. S., 529.

It is to be remembered that this is not a case in which the order admits its obligation to pay the benefit to some one, and is a mere stakeholder or interpleader. Nor again, is it a case where the certificate contains no self-executing provision for forfeiture, following upon a false statement, nor where the statement amounts to no more than a direction or representation, not declared by the contract itself to be a warranty. Nor yet is it a case where a valid designation, and therefore a valid contract, was made in the first·place with a change later to an invalid designation. And it is not a case where the constitution and laws of the order do not become a part of the contract, either by force of the contract itself, or by the compulsion of a statute.

It is a case of ordinary contractual origin and relations, in which the language of the contract is plain, clear and unambiguous, and not open to enlargement or diminution by construction, unless it is to be aided by some coercive consideration to which we have not so far in this discussion referred. That language, at the crucial point of contact, is this:

"I hereby certify, agree and warrant that all the statements, representations and answers made by me in this application, * * * are full, complete and true * * * and I agree that if any untrue statements or answers are made by me in this application, * * * my beneficiary certificate shall become void and all rights of any person or persons thereunder, shall be forfeited."

By Sections 60 and 66 of the constitution of the order—they being by agreement and by statute a part of the contract sued on here—a forfeiture in case of an untrue answer, is denounced in terms equally explicit.

By Section 3, also above quoted, in case of a failed designation, with no substituted allowable designation—and it would follow, we are bound to suppose, also upon an impossible designa-

tion—the declaration of a forfeiture is just as emphatic, with an added provision for the lapsing of benefits so forfeited into the general beneficiary fund of the order.

Prior to the enactment in Ohio of a statute presently to be mentioned, the law of the state in regard to how this question of the construction of statements in applications for insurance, in cases where the parties have by their contract agreed that they are to be deemed warranties, was, we think tolerably well settled. Its conclusion was that it would leave the parties where they had left themselves.

Without canvassing the decisions of our Supreme Court in this respect along the lines of development, it will be enough for present purposes to call attention to the case of *Insurance Co.* v. *Pyle,* 44 O. S., 19. In that case the question to be determined arose upon a paragraph in the application for a policy of life insurance, which was in these words:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions; and it is acknowledged and agreed by the undersigned that this application shall form a part of the contract of insurance, and that if there be, in any of the answers herein made, any untrue or evasive statements, or any misrepresentations, or concealments of facts, then any policy granted upon this application shall be null and void; and all payments made thereon shall be forfeited to the company."

The court, when it came to deal with the case put the issue in this clear language: "Did the policy ever attach, or was it ever valid?"

It was admitted in the opinion that the avoidance of the policy was sought on the ground of "untrue statements, innocently made" by the applicant.

The question thus propounded by itself to itself, the court answered as follows:

"In this case the (trial) court did not err in holding that the policy 'is wholly void and of no effect whatever, and was so from the moment it was issued.' "

In its opinion in the case the court quotes with approval the following language from *Jeffries* v. *Life Ins. Co.,* 22 Wall., 47:

"Any answer *untrue in fact*, and known by the applicant for insurance to be so, *avoids the policy*, irrespective of the question of the materiality of the answer given to the risk. * * *

"Nothing can be more simple. If he makes any statement in the application, it must be true. If he makes any declaration in the application, it must be true. A faithful performance of this agreement is made a express condition to the existence of a liability on the part of the company."

And the following also, from *Aetna Life Ins. Co.* v. *France,* 91 U. S., 510:

"The company was not liable if the statements made by the insured were not true. The agreement of the parties that the statements were absolutely true, and that their falsity in any respect should avoid the policy, removes the question of their materiality from the consideration of the court or jury."

And this, from *The Co-Operative Life Assn.* v. *LeFlore,* 53 Miss., 1:

"A contract of insurance, like other contract, is avoided by an untrue statement by either party as to a matter vital to the agreement, though there be no intentional fraud in the misrepresentation."

And again, the following from *Foot* v. *Aetna Life Ins. Co.,* 61 N. Y., 571:

"If a policy of insurance declare that the statements made in the application shall be part and parcel of the policy, such statements become warranties and must be true, whether material or not."

And this also, from *Clark* v. *Manufacturer's Ins. Co.,* 2 Wood & M., 472:

"A warranty is generally a stipulation made and described in the policy itself, and must be complied with, whether material or not. * * * Where a material fact is suppressed in such representations, the insurance is avoided, and the policy does not attach, whether the suppression happens by neglect or fraud."

And at last the court, after its approval of these and other authorities of like import, sums up and fixes the law of the case, in the syllabus, thus:

364                    COURT OF APPEALS.

Woodmen of the World v. Gallagher.        Vol. 19 (N.S.)

"1.  The provisions of life insurance policy are construed and applied like the terms of any other contract, and such provisions may render the policy void, *ab initio,* by the terms of the same and the failure of warranty.

"2.  When a life policy is issued and accepted upon the expressed condition that the answers and statements of the application are warranted true in all respects, and that if the policy be obtained by any untrue answer or statement, or by any fraud, misrepresentation or concealment, 'the policy shall be absolutely full and void'; and as to matters material to the risk some of the answers and statements are untrue in fact, though made without actual fraud and under an innocent misapprehension of the purport of the questions and answers, no contract of insurance is thereby made, and the policy does not attach, but it is void, *ab initio."*

In the case at bar we conceive the untrue statement to be material.  It consisted in the applicant undertaking to create by it the relation of dependent, a relation which if established would confer the right of recovery under the certificate on the named beneficiary, but if false no such right would accrue. . The truth or falsity of the statement, therefore, went to the heart of the transaction.  The life of the benefit depended wholly upon its truth.  But for it, and the assumption that it was true and not false, the certificate would not have been issued, and if it was false, the transaction, by the agreed terms of the contract, had no vitality.

If then the materialty of the statement is necessary to bring this case within the letter of the syllabus in *Insurance Co.* v. *Pyle, supra,* in our estimation the necessity is met, and there is no need of falling back to the cases cited, and apparently approved in that case, where these say that under a contract like the one we have in hand, the materiality of the untrue statement is of no moment.

Such we conceive to be the law of Ohio in a case unaided and unaffected by any modifying statute.  The application of the rule in its full rigor, however, in many insurance cases necessarily resulted in hardships in some instances—hardships often, no doubt, unmerited.  The law is no respecter of persons—not even of worthy and unfortunate persons, and in its dealings with them is sometimes pitiless.

Accordingly, and without doubt feeling the force of this consideration in its bearing on the helpless, the widow and the stricken, the Legislature passed an act which is now embodied in Section 9391 of the General Code, and which reads thus:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence in any trial to recover upon such policy, unless it be *clearly* proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer."

Passed, as it must have been, to relieve against the hardness in many cases of the principle announced in *Pyle* v. *Ins. Co., supra,* it is not to be doubted that if this statute can be applied in the case at bar, it will perhaps operate so as to give the plaintiff a considerable chance of success before a jury, for in that contingency the case would, we suppose, properly go before a jury for a verdict.

Can it be so applied? We think not.

For reasons which, doubtless, seemed to itself to be sufficient, and on grounds of salutary public policy, no doubt, the Legislature has seen fit to enact another statute, which is as follows:

"Section 9465. Except as herein provided, such societies (including, clearly, the defendant) shall be governed by this act, and shall be exempt from the provisions of the insurance laws of this state, not only in governmental relations with the state, *but for every other purpose,* and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

In no such subsequently enacted law is the defendant order expressly or by implication designated, it is believed, and the claimant here is left exposed to all the harshness of the rule in *Insurance Co.* v. *Pyle,* pushed to its necessary conclusion in this case.

We can not, as none of the cases from other states than Ohio, cited in the argument, do, regard the untrue answer given as a mere direction, or otherwise than as of the substance of the

transaction, even if the parties had not by the express terms of their contract made it substantial, beyond the power of the courts, as we think, to make it otherwise.

Under the law of Ohio, as we are constrained to find it, we must hold that by reason of the untrue answer as to the relation of dependence of the assured to the beneficiary the certificate sued on never attached but was void from the beginning.

It follows that the issue in the case should not have been submitted to the jury at all, and that the court below erred in so submitting it and in the various steps consequent upon such erroneous submission.

The judgment of the court of common pleas is therefore reversed, and judgment against the defendant in error for the costs in this behalf made is allowed—that being the judgment which the court below should have rendered.