SLADDEN v. NEW YORK LIFE INS. CO.

(Circuit Court of Appeals, Seventh Circuit. April 5, 1898.)

No. 440.

1. LIFE INSURANCE—FALSE REPRESENTATIONS IN APPLICATION—EVIDENCE.

An abstract of the application and medical examination contained in the last sheets of the policy introduced by plaintiff will be presumed, in the absence of any evidence of mistake, to be correct, and they are competent evidence of the contents, execution, and genuineness of the originals; and if, in connection with the proofs of loss also introduced by plaintiff, they show a breach of the warranty in the application, there can be no recovery.

2. SAME—FALSE STATEMENTS IN APPLICATION.

In an application, the applicant stated that she had no physician, and had consulted none, when in fact she had been attended by a physician for more than two months prior to the application, and had had consumption for nearly a year. Held, that the failure to disclose the facts was a violation of the warranty that she had made a full, complete, and true statement, and no recovery could be had.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This action was brought by the plaintiff in error, S. C. Sladden, as executor, to recover the amount of a policy of insurance upon the life of his wife, Mary, to whose executors, administrators, or assigns the policy had been made payable. The declaration embodies a copy of the policy, which contains the usual clause making the written application, with its "agreements, statements, and warranties," a part of the contract. A number of pleas were interposed alleging breaches of warranty in that certain statements of the application were false. At the trial, the plaintiff, according to the bill of exceptions, "introduced in evidence the insurance policy, which is composed of four sheets. The first two pages are set forth in the plaintiff's declaration. The third and fourth pages are as follows." Then follows an "abstract (e. & o. e.) of the application for insurance in the New York Life Insurance Co.," consisting presumably of the usual questions and answers, followed by an agreement signed by the applicant, the first clause of which is as follows: "That the statements and representations contained in the foregoing application, together with those contained in the declaration made by me to the medical examiner, shall be the basis of the contract between me and the New York Life Insurance Company; that I hereby warrant the same to be full, complete, and true, whether written by my own hand or not; this warranty being a condition precedent to, and in consideration

for, the policy which may be issued hereon." Immediately following this, as a part of the four pages of the policy introduced in evidence, is a copy or abstract of the "declarations made to the medical examiner of the New York Life Insurance Company," in which appear the following questions and answers: "(5) What is the name and residence of your physician? A. Have none. (6) What other physician have you consulted? A. None." The plaintiff also put in evidence the formal proofs of death made to the company, including the certificates of physicians in attendance during the last sickness of the deceased. According to the certificate of Dr. H. Wallace, he attended Mrs. Sladden, in November, 1892, which was eight or nine months before the date of the policy, and "the trouble for which the patient consulted was slight uterine congestion, which yielded to treatment within ten days, and during that time she was not confined to the bed or house, but was up about her duties and out of doors. I was then physician for the family for nearly a year, and during that period I was not called upon to treat her again, nor did I see a condition requiring treatment. Whatever the cause of death, it developed after she left my care and observation, which occurred in August, 1893." The certificate of Dr. E. Fletcher Ingalls contains the following questions and answers: "(4) How long have you known deceased? A. Not before first visit to my office. (5) How long had you been the medical attendant or adviser of the deceased? A. May 11, 1893, to October 2, 1893. (6) For what disease did you treat or advise deceased prior to her last illness? A. None. (7a) Did you attend deceased during her last illness? A. Yes. (7b) If so, for what disease? A. Consumption. (8) Date of her first visit to your office? A. May 11, 1893. (9) Date of her last visit to your office? A. Oct. 2, 1893. (11a) What disease was the immediate cause of death? A. Consumption. (11b) How long, in your opinion, did deceased suffer from the disease? A. From the fall of 1892. (14) When were you first consulted by the deceased, or by any relative or friend, for the affection which either directly or indirectly caused death? A. May 11, 1893." Dr. Wallace was called as a witness for the plaintiff, and testified that he had called himself the family physician of the deceased because he had treated her only the time stated, and at another time was called to Mr. Sladden's house when an accident had occurred to his father-in-law, and, when asked if that was all, answered: "I base it as family physician on being called to the house for such medical work as might be needed."

The plaintiff, being called in his own behalf, testified that on May 11, 1893, he went with his wife to the office of Dr. Ingalls, and then was asked the following questions, to each of which the court sustained an objection: "What did you go there for?" "What, if any, trouble was your wife suffering from then?" "What did Dr. Ingalls say she was suffering from at that time?" "What was your wife treated for at that time?" "Was she treated at that time for a slight cold?" "Was she suffering at that time from anything else than a slight cold?" "What was the condition of her health at that time?" "Did she within a few days recover entirely from what she went to consult Dr. Ingalls about at that time?" "Did that trouble affect in any way her general health?" No statement was made when the questions were propounded, and the bill of exceptions does not show what answer the witness was expected to make to any of the questions. The same witness, having stated that he was present when Dr. Brown, medical examiner of the defendant, examined Mrs. Sladden, was asked the following questions, to each of which objection was sustained: "Did Dr. Brown ask her, what is the name and residence of your physician?" The Court: "Objection sustained, because it is the understanding of the court that whatever there was at this time was in writing, and that writing should be before the court before any allowance of any examination upon it." "Did Mrs. Sladden write anything to Dr. Brown, or to the defendant?" "Did Dr. Brown write down anything at that time?" Answer: "To the best of my knowledge, yes." "Before writing down such matter, did he ask Mrs. Sladden any questions?" "Did he read to her any questions?" "Did he ask her what is the name and residence of your physician?" "Did he ask her when and for what have his services been required?" "Did he ask her what other physicians have you consulted?" "Did he ask her when and for what?" "If he asked her what is the name and residence of your physician, what did she reply if anything?" "Did she respond to such a question by saying: 'Do you wish me to detail any slight cold or accident I may have had, and the physician, or only grave matters?'

And did he answer, 'No colds or accidents, but serious matters'?" There was likewise no statement at the time, and the bill of exceptions does not show what answer was expected to any of these questions. The plaintiff, having made all necessary formal proof, rested his case; and thereupon, the defendant having moved for a peremptory instruction to the jury to find a verdict for the defendant, the court directed a verdict "in favor of the plaintiff for $227.50, the amount of the premium only." To that direction it does not appear that any objection was made or exception taken.

The assignment of error contains numerous specifications which, excepting the ninth, are objected to on one ground or another, and those directed to the refusal of the court to permit answers to questions propounded to witnesses on the ground that the substance of the evidence excluded is not set out in the assignment of errors as required by rule 11 of this court. The ninth specification is that the court erred in instructing the jury to return a verdict for plaintiff for $227, the amount of the premium only. In the reply brief for the plaintiff in error it is said: "While several assignments of error are made, yet the main and indeed the only question technically before the court is whether that instruction was correct, and the ninth error assigned is probably sufficient to bring the whole case before the consideration of the court."

William Burry, for appellant.

Thomas A. Moran and Henry A. Gardner, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

No exception having been saved to the peremptory instruction upon which the verdict was returned, the ninth specification of error, instead of being sufficient to bring the whole case before the court, presents no question whatever; and, unless there was error in excluding material evidence, the judgment below must be affirmed. We have considered the meaning and application of rule 11 in a number of cases, and in U. S. v. Indian Grave Drainage Dist., 85 Fed. 928, have explained that, when an exception is to be saved to the exclusion of testimony, a statement should be made to the court at the time of the ruling, or before the conclusion of the trial, of the facts expected to be elicited from the witness in answer to the overruled question, the statement set forth in the bill of exceptions, and the substance of it in the specification of error, as required by the rule. The rule has not been complied with in this case, but, disregarding that objection, we deem it clear that no error was committed of which the plaintiff in error may justly complain. It is perhaps true, as urged, that the plaintiff made a prima facie case by introducing the policy of insurance as set forth in the declaration, by showing the payment of the premium, proving the death, and showing that the required proofs of death had been submitted to the company; and it may be that it was not necessary for the plaintiff to have put in evidence the third and fourth pages of the policy, containing the abstract of the application for insurance (Insurance Co. v. Rogers, 119 Ill. 485, 10 N. E. 242; Insurance Co. v. Kessler, 84 Ind. 310; Insurance Co. v. Ewing, 92 U. S. 377); but the plaintiff having chosen to put in evidence the abstract of the application and medical examination as set forth upon the policy, without asserting any mistake or inaccuracy, the presumption is that they were correctly abstracted or copied, and, as against the plaintiff, they were competent evidence of the contents and of the execution and genuineness of the

originals; and if the proof so made showed a breach of warranty or the falsity of a material representation, as alleged in any of the pleas, the court was right in taking the case from the jury. While the medical examination is not mentioned by name in the policy, it is expressly made a part of the application, which is made a part of the policy. That the application in important particulars was false is established by the certificates of physicians introduced in evidence by plaintiff as part of the proofs of death. So introduced, we have no doubt that the certificates, though not conclusive, were competent evidence against the plaintiff of the facts stated in them. What the significance of the certificate of Dr. Wallace is need not be considered. The importance of that of Dr. Ingalls is evident. It means that the insured visited him first on May 11, 1893, and from that date until the ensuing October 2d he was her medical attendant; that he treated her for no disease, but that she had consumption, and, in his opinion, had had it since the fall of 1892. If it was competent or possible to do it, no adequate attempt was made to remove or break the force of that statement. Dr. Ingalls was not called, and the questions which the plaintiff, as a witness in his own behalf and interest, was not allowed to answer, were directed to the condition of his wife at the time of the first visit only, and to the fact, suggested by two of the questions, that she soon recovered from the slight cold which she then had. If received, full answers to the questions propounded would not have covered the period of her visits to Dr. Ingalls between May 11th and July 29th, when the policy of insurance was issued, and therefore could not have shown an excuse, if excuse were possible, for the failure to state in her application that during that time she had been in attendance at the office and under the advice of Dr. Ingalls, as shown by his statement.

The proposition is asserted, and many citations made of authorities to support it, that "a warranty in an insurance policy is not violated where the insured omitted to mention treatment for a slight cold or temporary ailment or disorder which was cured at the time of the application for insurance, and which left no taint or vice in the constitution or general health of the applicant." But, if conceded in the fullest scope of its terms, the proposition does not meet this case, where one who had consumption went, according to the implications of the questions propounded, to a physician on account of a slight cold, of which she recovered in a few days, but for near three months thereafter, before the policy was taken out, according to the physician's statement, made visits of which no explanation was offered. Neither would the untruthfulness of the answer in respect to Dr. Ingalls have been mitigated if it had been shown that the medical examiner told Mrs. Sladden that he did not wish her to mention any slight cold or accident she may have had, and the physician whom she had consulted, and that she should answer only grave or serious matters. The impropriety, not to say absurdity, of permitting an applicant for insurance to determine what matters of health, which at the time were deemed grave enough to go to a physician about, were too slight and unimportant to mention to a medical examiner when applying for insurance, could not well be emphasized more strongly than by the

facts of this case; but, if the rule admitting such evidence were conceded, it could not apply when, as here, for near three months after the slight cold had gone there was a continued and unexplained attendance upon a physician, who, perceiving the presence of an incurable disease, prescribed no treatment whatever, and gave advice only.

The question has been discussed, but need not now be considered, whether the decision in Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, has been modified by the later opinion in Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87.

The judgment below is affirmed.