**PEORIA LIFE INS. CO. v. SMITH et al.**

No. 3445.

District Court, E. D. Michigan, S. D.
Jan. 5, 1931.

Oxtoby, Robison & Hull, of Detroit, Mich., for plaintiff.

Wm. H. Gallagher and Charles L. Goldstein, both of Detroit, Mich., for defendants.

SIMONS, District Judge.

This is an action by the plaintiff to set aside and void a policy of life insurance issued by it on July 24, 1923, upon the life of Howard K. Smith, one of the defendants, payable to the other, Jacob K. Smith, as beneficiary, on the ground that the policy was obtained by fraud, and further to set aside and cancel plaintiff's allowance of total and permanent disability benefit to the defendant Howard K. Smith on the ground that such allowance was obtained by fraud, and to recover and to be given a lien upon the policy for the money so paid by it.

The policy contains an incontestable clause, making it incontestable after one year from its date of issue, notwithstanding any fraud perpetrated by the insured in connection with its original issue. The disability clause of the contract provides that the disability must be due to "disease occurring while the policy is in full force." While alleged in the pleadings, it was not insisted upon at the trial, that the policy is itself void on the ground of fraud, in view of its incontestable clause, and counsel have agreed both in oral arguments and in briefs that the principal question for the determination of the court is as to whether Howard K. Smith, the insured, was afflicted with tuberculosis upon the date of the issuance of the policy, or whether the disease developed after the policy came into existence, and it is not claimed by the defendant that the incontestable clause precludes the plaintiff from claiming any relief from the disability settlement arrived at, on the ground that such settlement was made in reliance upon false and fraudulent statements made, or claimed to be made, in the application for indemnity.

The insured was an inmate of the Detroit Tuberculosis Sanitarium from June 26, 1922, to September 19, 1922, prior to the issuance of the policy. This is established by witnesses, and the admissions contained in the answers of the defendants. The insured was again at the sanitarium from November 8, 1923, to December 27, 1924. He was at the date of the trial again an inmate of the sanitarium. He made application for total and permanent disability on October 11, 1924, the disability being due to tuberculosis, and, upon such application and accompanying proofs, the indemnities now sought to be recovered were paid by the plaintiff.

At the trial, it was suggested that the insured's first visit to the Tuberculosis Sanitarium was for the purposes of observation, that he was not then suffering from tuberculosis, or that, if he then suffered from tuberculosis, he was completely cured prior to the issuance of the policy. In support of this suggestion, various lay witnesses were sworn, who testified to the appearance of the insured over a period of many months subsequent to his first visit to the sanitarium, and as to his physical activities. Such evidence is of course competent, but, in the light of all of the other circumstances appearing, it is doubtful whether it ought to be entitled to any great weight, or to be considered as having any substantial probative force.

The Detroit Tuberculosis Sanitarium is a well-known institution for the treatment of

persons suffering from tuberculosis. There is evidence that the insured, shortly after he was admitted to the institution, stated to a fellow patient that he had tuberculosis. In his application for indemnity, the fact that he had previously been an inmate of the institution is concealed. There is evidence that he was given attention by nurses and physicians during his first visit to the sanitarium. The insured is not produced as a witness, although the explanation is made that he is too seriously ill to come into court to testify. No effort was made to take his deposition at any time between the filing of the bill and the trial; none of the physicians or hospital authorities who might be able to refute the inference that his presence in the sanitarium was for the purpose of treatment for tuberculosis are produced; and all proffered testimony of that nature by the plaintiff is met with resistance on the ground of privilege.

■■ There can be no doubt that the failure to produce witnesses who have knowledge of material facts authorized the inference that the testimony of such witnesses would be adverse. Lincoln National Life Insurance Co. v. Erickson (C. C. A.) 42 F.(2d) 997; Hill v. United States (C. C. A.) 234 F. 39; Malouff v. Pope (C. C. A.) 9 F.(2d) 254; Sladden v. New York Life Insurance Co. (C. C. A.) 86 F. 102. The claim of privilege as to the testimony of nurses, physicians, and others, is of course, open to the defendant, but, when such evidence is sealed by objections upon the ground of privilege, there is no rule of law that I know of that will prevent drawing the inference that such privileged communications, if waived, would support the conclusions otherwise arrived at from presence for a substantial period in an institution for the treatment of tuberculosis, nor does the suggestion made on behalf of the insured that his presence at the sanitarium was for the purpose of observation and not for treatment seem persuasive. The record discloses that, when the insured was examined during the illness which preceded the making of the application for indemnity, the examining physician by means of X-ray immediately discovered that he was suffering from tuberculosis. It is, moreover, common

knowledge now possessed by all intelligent persons that not only the X-ray but the tuberculin test, and perhaps other tests, will disclose rather promptly to competent physicians the existence of active tubercular infection.

■ In drawing such inferences from the evidence as appear to me to be warranted, I am not taking into consideration at all the evidence offered and objected to as to the insured's having been a patient of Dr. Herbert Rich, prior to the time he was first admitted to the Tuberculosis Sanitarium, and subsequent to his discharge therefrom, or to any other evidence tending to show that his admission to the sanitarium in the first instance was brought about by Dr. Rich. In view of all of the circumstances, the absence of any challenge to the correctness of this proferred testimony, I have little doubt that, under the more liberal attitude now taken by courts, evidence of this sort from disinterested witnesses who will not be affected by the outcome of the case is competent, but even without it there appears to me to be ample evidence in the record that leads irresistibly to the conclusion that the insured was, at the time of the issuance of the policy, afflicted with the disease because of which he afterward made the claim for total and permanent disability, and that, at the time he was so afflicted with the disease, he knew it, and that he knowingly and fraudulently concealed from the plaintiff the material facts with respect thereto for the purpose of obtaining such indemnity, and I so find.

■ In view of these findings of fact and the agreement of counsel as to their legal effect, I find as a conclusion of law that the plaintiff is entitled to the relief prayed for in the bill with respect to the sums paid to the insured and to his beneficiary in reliance upon the claim for indemnity, and is entitled to the relief prayed for in respect to those premiums on the policy which the plaintiff paid. A decree may be entered in accordance with this memorandum. If any difficulty is experienced by counsel in arriving at a form of decree, the court will consider a proposed form of decree to be submitted upon proper notice to the adverse party.