## Case No. 8,509.

LORIE v. CONNECTICUT MUT. LIFE INS. CO.

[4 Ins. Law J. 632; 5 Bigelow, Ins. Cas. 233.]

Circuit Court, W. D. Missouri. April Term, 1875.

INSURANCE—LIFE—PROHIBITED LOCALITIES—WAIVER—RECEIPT OF PREMIUMS.

[1. In order to show a waiver of the condition of a life insurance policy prohibiting residence within certain latitudinal limits, it is necessary that the evidence of such waiver shall be clear and precise. The waiver cannot be inferred from mere incidental conversation had on the streets with the company's agent.]

[2. A life insurance policy contained a prohibition of residence within certain latitudinal limits. A mere receipt of premiums by the company while the insured resided within the prohibited limits cannot be taken as constructive notice to the company, and a waiver of the prohibition. It is necessary, in addition, to show actual knowledge of such residence by the company when receiving the premiums.]

This is an action on a life policy issued by the defendant on the fifth day of May, 1870, at Kansas City, Missouri, to Abraham Lorie, for one thousand dollars, containing, among others, the following conditions: "That the said insured is, under this policy, freely permitted to reside in any civilized abode in the Western hemisphere lying north 32d parallel of north latitude, in the United States, lying south of said 32d parallel (except from the first day of July to the first day of November,) * * * * without the consent of this company previously given in writing." The defense is, that the insured at the time of his death, which occurred on the 24th day of September, 1871, was residing south of the prohibited line. To this defense the reply is, that the defendant, through its agent, for a valuable consideration, agreed to give deceased its written consent to remain and reside at Videlia, Louisiana; and again, that de-

fendant, after knowing that deceased resided within the prohibited lines, received a premium, and thereby waived the conditions of the policy as to residence.

The testimony in the case is, that the premiums were paid to one E. W. Pierce, the resident agent of defendant at Kansas City, Missouri, which was also the place of residence of the insured; that between the tenth day of October and the nineteenth day of November, 1870, the insured, without notice to the company or its agent, left Kansas City to go by way of St. Louis to Videlia, Louisiana; that a day or two after he left, the plaintiff, who is a brother of the deceased, and who also resided in Kansas City, met Pierce on the street and told him that his brother had gone to Videlia; whereupon Pierce asked whether he was going to live there, and, being answered in the affirmative, said he ought to have a permit, intimating that he would charge nothing for it. Plaintiff told Pierce that he would attend to it for his brother if it did not cost too much. There is a conflict of testimony as to the time deceased left Kansas City; the plaintiff, soon after the death of his brother, in the making of proof of death furnished the company, states that it was on the 19th day of November, 1870, and when he testifies on the trial, makes it between the 15th and 29th of October, while another witness, whose deposition was taken, makes it between the 10th and 15th of October, 1870. The insured died at Videlia, Louisiana, on the 24th of September, 1871, of yellow fever, after an illness of four or five days. There were two letters, dated respectively May 5th and 22d, 1871, written by Pierce to deceased, the first addressed to him at Natchez, Miss., and the second at Videlia, La. The first, dated May 5th, as follows: "Enclosed please find renewal receipt for your life insurance policy. Your brother, Joseph Lorie, paid for it." The letter of May 22d is as follows: "Mr. J. Lorie handed me this day your letter dated May 16th. I mailed your receipt in a registered letter, May 6th, to you. to Natchez, Miss.. as Joseph Lorie directed me. In regard to the premium, I told you after the second payment it would be less. You need not have any fears about it not being a good investment. It is the best investment you can make with the money it costs. After the second payment your dividend will decrease your payment annually. Wishing you health and prosperity, I remain yours very respectfully [both signed] E. W. Pierce."

This is all the testimony directly bearing on the issues.

Johnson & Botsford, for plaintiff.
Lee & Adams, for defendant.

[Before DILLON, Circuit Judge, and KREKEL, District Judge.]

KREKEL, District Judge. The questions to be determined are, was there an agreement, as set up in the reply, to waive the

condition of the policy as to residence, and if not, was the receiving of the premium on May 5th, 1871, a waiver of the condition of residence? The testimony as to an agreement for a valuable consideration to waive in writing the condition of the policy as to residence is, that plaintiff met defendant's agent on the streets of Kansas City two or three days after the insured had left, and stated to him that his brother had gone to Videlia, Louisiana, to live, and when the agent spoke of the necessity of having a permit, he replied that he would see to it if it did not cost too much. Such incidental talk on the streets, when viewed with reference to the allegations in the reply, and specially the policy, providing as it does that previous written consent must be obtained of the company, and by a printed note on the face of the policy, giving notice that no agent had a right to waive any of the conditions of the policy, cannot be construed into an agreement to waive the conditions of the policy as to residence.

As to the second point, was the receiving of the premium on the 5th of May, 1871, a waiver of the condition of the policy as to residence? In support of the affirmative view, May on Insurance (page 404, § 339) is relied on, and is as follows: "But the right to insist upon a compliance with such restrictions may be waived, and a receipt of the premium by the insurers after a known violation of the conditions against residence abroad, or of the terms of the permit granted, is a waiver of their right to claim a forfeiture by reason of such violation. And this is true whether the knowledge be actual or constructive, as whether the violation is known to the agent of the insurers who receives the premiums." It will be observed, in the first place, that a knowledge of the violation of the conditions of the policy must be brought home to the company, either direct or to the agent. The language that the knowledge may be actual or constructive, has reference to the knowledge of the agent being the knowledge of the insurers, and does not mean to convey the idea that constructive knowledge of the agent is sufficient to bind the insurers. If the view was to prevail that constructive knowledge of the agent bound the insurers, then the date of the deceased leaving Kansas City becomes important.

An examination in the most favorable view to the plaintiff of the testimony in the case seems not to furnish constructive notice to the agent even. Assuming that the insured left Kansas City between the 10th and 19th days of October, by way of St. Louis, to go to Louisiana, and that, two or three days afterwards, plaintiff, meeting defendant's agent on the street, informed him that he had gone there to reside, in the absence of all testimony that he arrived within the prohibited lines before the 1st of November,

would not give constructive notice. The possibility that he might have arrived certainly imparts no notice such as the plaintiff, who sets up and must maintain the waiver, is bound to show. It is true that the witness testifying to deceased leaving between the 10th and 19th of October also states that he soon thereafter received a letter from him; but this fact is not brought home to the knowledge of the agent. With the knowledge which deceased had of the condition of his policy, and his failing to apply for a permit when leaving, it is not likely that he would enter within the prohibited limits for the sake of, at best, a few days earlier arrival. The letters of the agent, Pierce, of May 5th and 22d, 1871, quoted in full and relied on by plaintiff, both as showing an agreement to waive and a waiver in the view of the court, bear rather against than for him. If a written waiver has been agreed on, or a waiver was intended, what would be more likely than a reference to either or both? But instead of that, after his brother had paid the premium for him, he props up his faith in life insurance as though he was apprehensive of an abandonment,—an idea in keeping with his feeling, previous to removal to obtain a permit. His failure to obtain a permit would be explained, however, if he did not intend to enter within the prohibited lines before the 1st of November, or left Kansas City late in October, or on the 19th of November, as first testified by plaintiff. The most careful examination of the testimony fails to satisfy the court that the agent had constructive notice even of the coming of insured within the prohibited limits prior to the 1st day of November, 1870, much less knowledge of his so doing. That it is actual instead of constructive knowledge the cases in maintenance of the text cited abundantly shows. Bevin v. Connecticut Mut. Life Ins. Co., 23 Conn. 244, is a case in which the company had received three premiums one year after full knowledge of the claimed violation. In Wing v. Havey, 27 Eng. Law & Eq. 140, the violation was known to both agent and company for fourteen years, and the premium received each year. The other cases are of similar import. In all of them the premiums were received after a known violation. In the case before the court the premium of the 5th May, 1871, was received before a violation, and while insured resided at Videlia, Louisiana, as under the policy he had a right to do up to the 1st July. The statement of the plaintiff to Pierce (who is dead) in the accidental conversation on the street, that insured intended to reside at Videlia, and that he would attend to getting a permit if it did not cost too much, must be understood as saying that if deceased continued to reside there it would be in conformity of the conditions of the policy, and under a permit, which, failing to obtain, the policy is avoided.