## UNITED STATES LIFE INS. CO. v. SMITH.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

### No. 605.

**1. LIFE INSURANCE—MISREPRESENTATIONS IN APPLICATION—WAIVER—AUTHORITY OF AGENT.**

An application for life insurance, which was made part of the contract, and the representations in which were part consideration for the issuance of the policy, consisted of two parts, one of which (to be filled and signed in the presence of the medical examiner) contained a provision that "no information or statement, unless contained in this application, made, given, received, or required by any person at any time, shall be binding on the company." Such application contained the following question: "Has any application ever been made for insurance on this life, on which a policy was not issued for the full amount and of the same kind as applied for, and at ordinary rates?" This question was answered, "No." In an action on the policy it was shown without dispute that the insured had previously made three applications for insurance to different companies, all of which had been absolutely rejected. *Held*, that the fact that the local agent of the company, who had no duty in connection with such application, had been told of such rejections, and advised the answer made, did not bind the company, or change the effect of the answer as a fraudulent misrepresentation on a material matter, which rendered the policy void, the question not being ambiguous.

**2. SAME—DEFENSE TO ACTION ON POLICY—TENDER OF PREMIUMS PAID.**

A life insurance company is not required to tender back the premiums paid on a policy, to enable it to defend against an action thereon on the ground of fraudulent misrepresentations made in the application, where by the terms of the policy such defense is permitted, and the premiums paid are forfeited, in case the fraud is discovered, and notice thereof given the insured, within two years from the date of its issuance, and such provision has been complied with, and no premiums thereafter received. In such case, where the fraud is established, the forfeiture may be enforced.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This is an action upon a policy of life insurance issued by the United States Life Insurance Company of New York upon the life of Joseph Smith; the beneficiary being Minnie J. Smith, wife of the assured. The policy was for $5,000, issued April 1, 1895. The assured died September 25, 1895. All liability was denied by the company, and suit was brought in the circuit court for the county of Hamilton, state of Tennessee, and removed therefrom by the company upon the ground of diversity of citizenship. The plea was, in effect, the general issue, with notice, according to Tennessee practice, that the defendant on the trial would rely, among other defenses, upon the fact that the person insured, in his application, had made untrue statements in respect to former applications for insurance which had been rejected, and had also made untrue statements in respect to certain diseases to which he had been subject,—among others, jaundice, palpitation of the heart, disease of the genital or urinary organs, diabetes, etc.,—and that the falsity of his statements had been discovered, and communicated to the insured and assured, within two years from the date of the policy. The policy, among other things, provided (1) that it was issued "in consideration of the statements and agreements in the application" for the same, "which are made a part of this contract," and the further consideration of the payment of an annual premium, "and upon the conditions and agreements upon the back thereof." Among these conditions and agreements referred to were the following: "(3) In case of understatement of age, the amount payable shall be the insurance that the actual premium paid would have purchased at the

true age of the insured. Any other breach of warranty or untrue or incomplete statement made in the application for this policy will render this contract void, provided that discovery of the same must be made and communicated to the insured or assured within two years from the date hereof." "(7) After two years from the date hereof, if the premiums on this policy are duly paid as herein stipulated, the liability of the company under this policy shall not be disputed." Among the questions and answers embodied in the application made part of the contract were the following: (1) "Has any application ever been made for insurance on this life, on which a policy was not issued for the full amount and of the same kind as applied for, and at ordinary rates?" "If so, by what company, and when?" This was answered, "No," without other comment or explanation. There was uncontradicted evidence that, at the time this application was made and signed, three separate applications had been made in as many different companies for insurance upon the life of this applicant, all of which had been rejected. (2) Among the questions and answers touching diseases to which the applicant might have been subject, were these: "Has the person ever been subject to or had jaundice? Difficulty in urinating? Neuralgia, or any disease of the genital or urinary organs?" Each of these questions were answered, "No." There was also a more general question in these words: "Has the person ever had any illness, local disease, or personal injury, or been subject to any surgical operation? If so, state nature, date, duration, and severity thereof?" The answer to this was: "No. Not in bed by illness for years, except a cold last fall, disabling him two weeks." There was evidence of most conclusive character tending to show that the insured had for years been the subject of a most serious disease, called "diabetes," and there was also evidence tending to show that he had had each of the other diseases inquired of. There was a disagreement between medical experts as to whether diabetes was a disease of the genital or urinary organs, and consequently an issue for the jury to say whether this was or was not one of the diseases specifically inquired about. The medical examination made at the time of the application was by a physician unacquainted with the previous medical history of the insured, and failed to disclose any present evidences of diabetes. The insured was asked to give the names and residences of physicians "who have attended the person or have been consulted by him," and to state "when and for what they were consulted." To this he answered by giving the name of Dr. Satterlee, and by saying that he had consulted him for the cold he had referred to in a former answer. There was evidence tending to show that the insured had been treated by or consulted with several other physicians. This application, after being filled out by the insured, was signed by him, and witnessed by the medical examiner. At the conclusion of all the evidence the plaintiff in error asked that the jury be instructed to find for the defendant. This was denied, and the cause submitted to the jury, who found for the defendant in error.

Henry A. Chambers and O. P. Buel, for plaintiff in error.

Wm. T. Murray, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The controlling question in the case is as to the effect upon the contract of insurance of the untrue answer of the insured to the question in respect to former applications for insurance. That question was in these words:

"Has an application ever been made for an insurance on this life, on which a policy was not issued for the full amount and of the same kind as applied for, and at ordinary rates?"

This the insured answered, "No."

The fact was not disputed that the insured had had three separate applications for life insurance rejected, and yet he answered this question in such way as to withhold this most material information from the company to whom he was then making a new proposal for insurance. That the answer was both material and a warranty has not been, and cannot be, disputed. For the defendant in error it is said that the insured stated the facts touching his former applications to one D. J. Duffey, then the local agent of the insurance company, and that Duffey advised him that the correct answer upon the facts stated would be, "No." The facts thus stated to Duffey were simply that three former applications to three different companies had been absolutely rejected. The learned trial judge refused to instruct the jury to find for the defendant, but left it to them to say whether the insured in good faith had acted upon the advice of the company's agent after stating the facts touching his former rejected applications, and that, if they should find this to be the case, the company would be estopped to rely upon the untruthfulness of the answer. This view of the trial court seems to have been due to some doubt entertained as to the entire clearness of the question. This question occurs in the printed form used by the company's medical examiner. One part of the application is to be filled out and signed in the presence of the soliciting agent, and witnessed by him. This is called "Form A." But the remainder of the application is to be filled out and signed in the presence of the company's medical examiner, and is called "Form B." The agent has nothing to do with this medical examination, and no control over it; and Duffey, though present in this instance, states that many companies require that the agents shall not be present. This form B, when filled out and signed, including the medical officer's personal examination and report, is forwarded by the latter to the company's chief medical officer, and does not pass through the hands of the local agent. Duffey was therefore in the discharge of no duty when present during the medical officer's examination, nor when advising the applicant as to how he should answer questions then propounded. Just preceding the signature of the applicant upon form B there is found the following declaration and agreement:

"(1) That all the statements and answers in this application are hereby warranted to be true, full, and complete, and that this application and declaration shall, with the policy herein applied for, alone constitute the contract between me and the United States Life Insurance Company of New York; *and no information or statement, unless contained in this application, made, given, received, or required by any person at any time, shall be binding on the company.* * * * (5) That this application, its statements, representations, and agreements, together with all the conditions and stipulations contained in the policy hereby applied for, *shall be binding on me* and on any future holder of this policy."

This is signed by the insured, Joseph P. Smith, and witnessed by E. A. Cobleigh, the medical examiner of the company. We have italicized the material parts of this declaration and agreement. The stipulation most material to the question in hand is that "*no information or statement, unless contained in this application, made, given, received, or required by any person at any time, shall be binding on the company.*" The contention now is that the "information"

given by the insured to D. J. Duffey, local agent of the company, as to the former rejected applications, and the "statement" made by Duffey that such out and out rejections were not comprehended by the question to which a false answer was given, should be binding on the company, and operate to estop it from relying upon this most material breach of warranty. This contention is based upon the singular theory that this declaration and agreement are not intended as a limitation upon the power of the company's agents to bind it by information given them by the assured, or statements made by such agents to an applicant, and not contained in the written contract and agreement. This construction needs no serious refutation. Information not communicated to a company's agent, or statements made to the insured by one not a company's agent, could in no event be binding on the company, or affect the contract. It would be a vain thing to stipulate against the binding consequences of that which without the stipulation could not affect the contract. This declaration is a plain and distinct limitation upon the powers of the agents of the company to affect the written contract by any statements or opinions not contained therein, or through any information received, and not embodied in the written application. This stipulation, signed by the insured, operated to inform him that he was to be absolutely responsible for the truth of his answers, and that answers not truthful and complete could not be excused because made at the suggestion of an unfaithful or ignorant agent. But it is said that to enforce such a provision will enable the company to take advantage of the misconduct or mistakes of its own agent. The same objection was urged in the late case of Maier v. Association, 47 U. S. App. 329, 24 C. C. A. 243, and 78 Fed. 570, when this court, speaking by Justice Harlan, said:

"It was said in argument that the company should not be permitted to take advantage of the misconduct or wrong of its own agent. But the law did not prohibit the company from taking such precautions as were reasonable and necessary to protect itself against the frauds or negligence of its agents. If the printed application used by it had not informed the applicant that he was to be responsible for the truth of his answers to questions, and if the want of truth in such answers were wholly due to the negligence, ignorance, or fraud of the soliciting agent, a different question would be presented. But here the assured was distinctly notified by the application that he was to be held as warranting the truth of his statements, 'by whomsoever written.' Such was the contract between the parties, and there is no reason in law or in public policy why its terms should not be respected and enforced in an action on the written contract. It is the impression with some that the courts may, in their discretion, relieve parties from the obligations of their contracts whenever it can be seen that they have acted heedlessly or carelessly in making them; but it is too often forgotten that, in giving relief under such circumstances to one party, the courts make and enforce a contract which the other party did not make or intend to make. As the assured stipulated that his statements, which were the foundation of the application, were true, by whomsoever such statements were written, and as the contract of insurance was consummated on that basis, the court cannot, in an action upon the contract, disregard the express agreement between the parties, and hold the company liable, if the statements of the assured—at least, those touching matters material to the risk—are found to be untrue."

The argument that the company should not be permitted to take advantage of the misconduct, wrong, or ignorance of its own agent

has little force upon the facts of this case. It is not possible to believe that the insured was honestly misled by the self-serving suggestion of an unfaithful agent. · The menace and peril of the business of life insurance lies in the interest given to agents to deceive both the insured and their companies, by making their compensation depend upon the success of applications secured by them. This was the trouble with Duffey. Unless he could succeed in suppressing the fact that this applicant had been three times rejected as a bad risk, he had no hope of seeing this application go through, or of earning his commission. Smith must have realized that his own record in this respect was a bad one, and was doubtless ready to lend an easy ear to any interpretation of this ominous question which threatened to defeat his purposes. This question was undoubtedly a comprehensive one. Possibly it would have been better to divide it into two or more. Still, it was not ungrammatical or ambiguous, when read with attention. When thus read, it is not possible to misunderstand it. We repeat it:

"Has any application ever been made for an insurance on this life on which a policy was not issued for the full amount and of the same kind as applied for, and at ordinary rates?"

Now, if Smith's former applications for insurance had been allowed, but for a less amount, or for a different kind, or at a rate greater than ordinary, there might be some excuse for finding the question confusing, and for applying to the company's agent for information touching different kinds of insurance contracts, or as to the difference between ordinary and special rates, and some excuse if misled by technical insurance terminology into making an untrue answer. But no such facts existed in Smith's case. No policies of any kind were ever issued upon his applications. He had been rejected out and out. This he knew. This Duffey was told. These facts made the question most simple. As men of average sense, they both knew that this fact of three former rejections was most vital. They knew that the grounds for this action would be investigated, and the whole history of the applicant unearthed. How can it be said that the answer "No" given to this question was either "true, full, or complete"? Yet no explanation was offered. Smith knew that this written application would constitute the basis of the proposed contract. Yet he was willing to accept the fraudulent suggestion of an unfaithful agent, by which a most pregnant fact was to be withheld from the knowledge of the company. Through the suppression of this fact, Smith obtained his policy, and Duffey his commission. The company was thus imposed upon, and induced to make a contract which in all human probability it would not have made if this history had not been suppressed. The facts bring the case fully within the spirit and letter of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, and Maier v. Association, 47 U. S. App. 322, 24 C. C. A. 239, and 78 Fed. 566. The meaning and interpretation of this question were for the court. It was not ambiguous, and required no technical knowledge as aid to its understanding. The facts did not make a case where a verdict could have been sustained, based upon a finding that the falsity of this answer was wholly due

to either the ignorance or fraud of Duffey. In the case of Insurance Co. v. Fletcher, 117 U. S. 519–529, 6 Sup. Ct. 837, heretofore cited, it was sought to avoid the consequences of a breach of warranty arising out of certain untrue answers made by the insured in his written application by evidence that the answers of the insured had not been correctly written down by the company's agent, though it appeared that the application as filled out by the agent had been signed by the insured. To this the court said:

"It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail, and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove, not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application, he would have seen that it is stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agents, unless the same were reduced to writing, and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed."

In the same case the previous cases of Insurance Co. v. Wilkinson, 13 Wall. 222, and Insurance Co. v. Mahone, 21 Wall. 152, were referred to and distinguished, the court saying:

"In neither of those cases was any limitation upon the power of the agent brought to the notice of the assured. * * * When such agents, not limited in their authority, undertake to prepare applications and take down answers, they will be deemed as acting for the companies."

There are also a class of fire insurance cases, of which the case of Insurance Co. v. Fischer (decided by this court at this term) 92 Fed. 500, is a type, which in no wise conflict with the doctrine upon which the present decision must rest. In the case referred to, the insurance company was held to be estopped as a consequence of the knowledge of the existence upon the property insured of a chattel mortgage, notwithstanding a provision of the policy which rendered it void if the insured then had any other contract of insurance not indorsed thereon. The agent had authority to write and deliver the policy, and was thus representing his principal, with knowledge of the actual facts of the case. The case of Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, is not in point. That case was decided upon a statute of the state of Iowa. The view entertained by this court of the scope of that case as an authority is stated in Maier v. Association, 47 U. S. App. 322–332, 24 C. C. A. 239, and 78 Fed. 566, and that view need not be repeated.

The objection that no defense going to the original invalidity of the contract can be made without tendering back any premium re-

ceived remains to be considered. This is not a suit by the company for the cancellation of the policy, but is an action by the beneficiary, based upon it as a valid contract. The general rule is that, if a risk never attaches under a policy, the premium is not earned, and, if paid, may be recovered, unless the insured has been guilty of fraud. Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260; May, Ins. § 4. But we know of no rule which prohibits the defense here made except upon condition of a previous tender of the premium paid. In Insurance Co. v. Fletcher, cited above, there was a statute of Missouri which provided that no such defense could be made, unless the premium paid should be tendered back. In that case, as this, the defense was a breach of warranty in the application, and touching this question of the repayment of the premium the court said:

"In such a case, assuming that both parties acted in good faith, justice would require that the contract be canceled and the premiums returned. As the present action is not for such a cancellation, the only recovery which the plaintiff could properly have, upon the facts he asserts, taken in connection with the limitation upon the powers of the agent, is for the amount of the premium paid; and to that only would he be entitled by virtue of the statute of Missouri."

Here the policy provides that this defense may be made, provided discovery is made and notice communicated to the insured within two years from the date of the policy. The facts show that the insured was notified of the falsity of his answer, and that this rendered the policy null and void. The first communication to the insured was in May, 1895, by a telegram. On July 10, 1895, the company repeated the communication by letter, in which, among other things, it was stated that:

"The policy provides that under such circumstances all premiums paid become forfeited to the company, and we notified you promptly by telegraph, as above, on receiving the foregoing information, in order that you might not incur any loss by payment of premiums to our agent on account of this insurance, if you had not already made such payment, as we are informed that you had not at that time. We instructed our agent Mr. Gwathmey to get the policy from you and return it to us. He has not yet done so. We write this to confirm our telegram above quoted, and to advise you that we will under no circumstances recognize any liability whatever under or by reason of the issue of this policy."

The policy was not returned, and in September following the insured died. Within a few days after this death, the beneficiary having notified the company of the death of the insured, the company wrote her of the previous communications to the insured, and again avowed their purpose to treat the policy as null and void. No demand was ever made for a return of the premium. Upon the contrary, counsel for the company, in open court, pending the trial below, stated that the company had no knowledge of the payment of the premium to their local agent until testified to by the agent on the trial, and then offered to tender and pay the premium so paid. This was objected to by counsel for the beneficiary, and disallowed by the court. Under these circumstances, we think this tender was made in time, even if the repayment of the premium could have been legally demanded. But this policy, on its face, provides that, "whenever this policy shall become null and void from any cause, all payments made hereunder shall become forfeited

to the company." Inasmuch as no premium was paid after discovery of the fraud of the insured, we think this forfeiture clause may be enforced, the policy having been obtained through the fraud of the insured. May, Ins. (1st Ed.) § 4; Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260. Certainly the company will not be precluded from making the defense of fraud in the obtaining of the policy by its failure to make other tender than that made, in view of this clause in the policy. In no view of the case could a verdict for the plaintiff below have been supported. The untrue and material character of the answer of the insured in reference to former applications upon which policies had not issued was established beyond controversy. Unless, therefore, the fact that the agent of the company had suggested this answer with knowledge of the truth would operate as an estoppel, there was no question for the jury, and no issue of fact for settlement. In view of the undisputed facts, the court should have instructed for the defendant below; there being no reasonable view of the facts which would, under the law, justify a verdict for the plaintiff.

The conclusion thus reached upon the falsity of the answer of the insured in respect to previous applications for insurance makes it unnecessary to consider his answers in respect to the diseases with which he was afflicted, or any of the other questions discussed by counsel. Reverse the judgment, and remand for a new trial.