CARUTHERS v. KANSAS MUT. LIFE INS. CO.

(Circuit Court, E. D. Arkansas, E. D.   April 29, 1901.)

1. LIFE INSURANCE—AVOIDANCE OF POLICY—BREACH OF WARRANTY.

A negative answer by an applicant for life insurance to the question in the application whether he ever had "any serious illness, constitutional disease, or surgical operation," is not a false representation which will avoid the policy as a breach of warranty because he has had a slight illness, or because he once broke his leg, which was set and attended to by a physician.

2. SAME—MEDICAL ATTENDANCE.

The failure of an applicant for life insurance to fully and truthfully answer a question in the application, requiring him to give the name and address of each physician consulted by him or who prescribed for him during the preceding five years, where his answers are made warranties, constitutes a breach of warranty which avoids the policy.

3. SAME—ESTOPPEL—KNOWLEDGE OF MEDICAL EXAMINER.

Where a medical examiner for a life insurance company has nothing to do with the acceptance of risks or the issuance of policies, and his only duty in connection with the questions in a medical report to be answered by the applicant is to correctly write down the answers as made, his knowledge in regard to facts covered by such answers cannot be imputed to the company, and will not estop the company from showing the falsity of such answers, unless it appears that they were not written as given by the applicant.

Action at Law on a Policy of Life Insurance.

The plaintiff instituted this action to recover on a policy of insurance issued by the defendant on the life of her son. By stipulation in writing, trial by jury was waived, and the cause submitted to the court. The court makes the following findings of facts:

On the 27th day of June, 1900, Robert H. Caruthers made an application for insurance at Helena, Ark., to the defendant, a life insurance company organized under the laws of the state of Kansas, and having its domicile in the state of Kansas. The application was made in writing by the assured, Robert Hager Caruthers. Accompanying the application, and a part thereof, was the medical examiner's report, made by Dr. C. R. Shinault, the medical examiner of the defendant at Helena, Ark. In the medical examiner's report a large number of questions were asked of the assured, and by him answered, and reduced to writing on the application by the medical examiner; and the last paragraph on that application is as follows, to wit:

"I hereby warrant and agree on behalf of myself and of any and all persons who shall have or claim any interest in any policy issued hereunder each of the above and foregoing answers to be full, complete, and true, and that each and all of said answers are correctly recorded; that I am the same person described above; and that I am temperate in my habits, and am now in good health.

"Dated this 27th day of June, 1900.

"[Signed]                                          Robert Hager Caruthers.

"Signature of the applicant (to be written in the presence of the medical examiner)."

The signature to the application proper was made by the assured, but that to the medical examiner's report was signed by the medical examiner, Dr. Shinault, at the request of the assured, who, although able to read and write, was illiterate, and requested the medical examiner to sign it for him. That this application for insurance, together with the said medical examiner's report, which is a part thereof, was forwarded by defendant's agents to the home office of the defendant at Topeka, Kan., and thereon the defendant issued the policy of insurance sued on in this case, dated June 30, 1900. The policy was thereupon sent by the defendant to its agents at Helena, and by them delivered to the assured; and the consideration was paid by the assured by executing two notes of $42 each, but neither of which notes have been paid, not having matured at the time of the death of the assured; and upon the trial the notes were offered by the defendant company to be returned and filed in court.

The policy of insurance issued by defendant is in part as follows: "The Kansas Mutual Life Insurance Company, in consideration of the written and printed application for this policy, which is hereby made a part of this contract, and of the sum of eighty-four dollars to be paid in advance, hereby insures the life of Robert H. Caruthers * * * for the sum of $2,500.00, to be paid to Mirenda H. Caruthers, his mother," etc. Attached to the policy is a true and exact copy of the application for insurance, made by the assured, together with the medical examiner's report, and questions and answers of the assured. Among the questions asked by the medical examiner and the answers made thereto by the assured were the following:

"(4) Have you ever had any serious illness, constitutional disease, injury, or undergone any surgical operation? Answer. No."

The seventeenth question is as follows: "Have you now, or have you ever had, any of the following diseases? Answer 'Yes' or 'No' opposite each." There were then submitted thirty-three questions referring to particular diseases, but there is no question asking about malarial fever or hematuria. The thirty-third specification is, "Typhoid or other fever," which was answered by the assured, "Yes."

The eighteenth question is: "When last attended by a physician, and for what disease or injury? Answer. Malarial fever in the fall of 1899."

"(20) Give name and address of each physician consulted, or who has prescribed for you, during the past five years, if any, and dates and cause of the same, in the clinical form No. 22 below.

"(21) Have you ever had any ailment or injury whatever not already mentioned? Answer. No.

"If any of the foregoing questions are answered 'Yes,' or if you had any other disease or injury, explain fully in the clinical form No. 22 below.

| Question 22. | Disease or Injury. | Date. | Duration. | Was Recovery Complete. | Name and Address of Medical Attendant. |
|---|---|---|---|---|---|
| Answers. | Malarial fever. | 1899. | One week. | Yes. | Dr. C. R. Shinault, Helena, Ark. |

"Nothing else for ten years."

On September 27, 1895, the assured suffered a fracture of the tibia fibula of one lower limb while residing in Obion county, Tenn., for which he was attended by Drs. Frank Roberts and W. W. Holloway, regular practicing physicians, by whom the fracture was reduced, and the limb placed in splints and bandages; but no surgical operation performed by them. That Dr. Roberts continued his visits and attendance upon said Caruthers for a week, and the assured was confined to the house about six weeks. That at that time the assured had chills and fever for two days, which grew out of his confinement to his bed, caused by the fracture of his leg. That about three or four weeks after the fracture Dr. Roberts prescribed for the assured for malarial chills and fever. In September, 1899, the assured was attended by Drs. W. C. Russwurm and B. M. Ward, of Helena, Ark., who were regular practicing physicians, for malarial hematuria, and Dr. Russwurm continued his visits and attendance upon the assured, on account of said disease, from the 22d day of September, 1899, until the 30th day of September, 1899, making 10 visits to him. This attack of hematuria of the assured was a severe one. The disease of hematuria is one of the most malignant forms of malaria, characterized by bloody urine, and one of the most fatal of the malarial family. The after-effects of hematuria are that it makes such inroads upon the system of man that, after he has had one attack, he is never the same physically, and it has a tendency to lessen his longevity. At the time of the attendance upon the assured by Drs. Russwurm and Ward, in September, 1899, Dr. C. R. Shinault was associated in the practice of medicine in the city of Helena, Ark., with the said Dr. Ward, but at that time Dr. Shinault was temporarily absent from the city of Helena on a trip to California. Dr. Shinault had been the family physician of the assured for four years prior to his death, and at the time he wrote down the answers of the assured in his application he knew that he had been treated by Drs. Russwurm and Ward in September, 1899, for malarial hematuria. This information was obtained by Dr. Shinault before he was appointed as medical examiner for the defendant company. The answers were put down by Dr. Shinault as directed by the assured. The assured did not direct the said Shinault to state the fact that he had been treated in September, 1899, by Drs. Russwurm and Ward; and the said Shinault failed to state that fact in the medical examination, although he knew at the time of that fact. Nor did the assured inform Dr. Shinault, or request him to put down in his answers to the questions propounded in the examination, that he had suffered from a fractured leg in 1895, in Tennessee, and that he was then treated by Drs. Roberts and Holloway for this fracture, and also for chills and fever. Nor did Dr. Shinault know of that fact at that time. On the 3d day of September, 1900, the assured died, his death being the result of an attack of malarial hematuria, and in his final illness he was treated by Drs. Shinault and Russwurm. That on October 6, 1900, formal proofs of the death of the said Caruthers were mailed to the defendant, and by it received at its home office on the 8th day of October, 1900. That no complaint or objection was urged by the defendant company to the sufficiency or form of said proofs. That thereafter the defendant learned in this cause, and, as soon as it had ascertained the facts, it denied liability under the policy sued on.

John J. & E. C. Hornor and Jacob Fink, for plaintiff.
M. L. Stephenson and R. T. Herrick, for defendant.

TRIEBER, District Judge. The defendant denies liability in this action upon the grounds that the assured, in his application, warrant-

ed and agreed that all the answers made by him in reply to the medical examiner of the defendant, and signed by the assured, were full, complete, and true, and that each and all of said answers were correctly recorded, and that the answers to some of the questions, fully set out in the answer, and which will be as fully stated in this opinion as it is necessary for the determination of this cause, were false. One of the grounds upon which it is claimed by the defendant that the policy was avoided is that the assured falsely answered question 4 that he had never had any serious illness, constitutional disease, or undergone any surgical operation. The court found the facts on that issue to be that "on September 27, 1895, the assured suffered a fracture of the tibia fibula of one lower limb, for which he was attended by Drs. Roberts and Holloway, regular practicing physicians, by whom the fracture was reduced, and the limb placed in splints and bandages, but no surgical operation was performed by them; that Dr. Roberts continued his visits and attendance upon the said assured for a week, and the assured was confined to the house about six weeks; that at that time the assured had chills and fever for two days, which grew out of his confinement to his bed, caused by the fracture of his leg, for which chills and fever Dr. Roberts also prescribed for him." Question 4 was limited to "serious illness, constitutional disease, or a surgical operation." But the court finds from the evidence that that illness of the assured was neither serious nor was it a constitutional disease, nor was the treatment of the fractured leg a surgical operation. The word "serious" in this question means "a grave, important, and weighty trouble." Brown v. Insurance Co., 65 Mich. 306, 32 N. W. 610; Goucher v. Association (C. C.) 20 Fed. 596. In the Century Dictionary the words "serious illness" are defined as "attended with danger; giving rise to apprehension." As the company saw proper to use the word "serious" in this question, it is unnecessary to determine whether a failure on the part of the assured to mention, in reply to this interrogatory whether he had ever been ill, every slight ailment, would avoid the policy.

It is next claimed that the policy was vitiated by reason of the fact that the answers of the assured to the twentieth question in the medical examination were false, and avoided the policy. The question and answers are as follows: "Question. Give name and address of each physician consulted or who has prescribed for you during the last five years, if any," etc. "Answer. Dr. C. R. Shinault, Helena, Arkansas." The falsity of this answer is alleged to consist in the fact that in September, 1895, which was within five years, the assured had been prescribed for by Drs. Frank Roberts and W. H. Holloway for a fractured leg and chills and fever, and in September, 1899, he had been attended and prescribed for by Drs. W. C. Russwurm and B. M. Ward for a malignant form of malarial fever, or hematuria. That he was attended by these physicians at these times is admitted, and was so found by the court. But it is alleged in behalf of the plaintiff that the omission to mention the fact of his having been attended by Drs. Roberts and Holloway in 1895 was immaterial, as they only attended him to set a fractured leg, and for a slight case of chills and fever, caused thereby, which was not an ill-

ness, within the meaning of the application or policy; and as to the omission to mention Drs. Russwurm and Ward, it is insisted that Dr. Shinault, the medical examiner of the defendant who examined the assured, knew at the time he wrote down the answer that these physicians had prescribed for the assured for hematuria in 1899, and that his knowledge was the knowledge of the company, which is thereby estopped to claim a forfeiture of the policy. As regards Drs. Roberts and Holloway, counsel overlook the fact that question 20 is not, like question 4, limited to serious illness, but calls for the name and address of each physician consulted or who has prescribed for the assured within five years. The identical question has been before the courts in many instances, and the great weight of authority is against plaintiff's contention. In Cobb v. Association, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666, in which the same question was before the court, it was held:

"While the question whether the assured had a fixed disease, and what the disease was, might be an inquiry involved in considerable embarrassment, the question whether he had consulted a physician, or had been professionally treated by one, was simply one about which there could be no misunderstanding. Had it been replied to in the affirmative, the answer would have led to other inquiries. Indeed, the question which follows, which remains unanswered, is, 'If so, give dates, and for what disease.' It is upon the existence of this latter question that the plaintiff founds an argument that it was necessary to show that the insured had some distinct disease permanently affecting his general health, before it could be said that he had answered this question untruthfully. But the scope of the question cannot be thus narrowed. Even if the insured had only visited a physician from time to time for temporary disturbances proceeding from accidental causes, the defendant had a right to know this, in order that it might make such further investigation as it deemed necessary. By answering the question in the negative, the applicant induced the defendant to refrain from doing this."

In Insurance Co. v. McTague, 49 N. J. Law, 587, 9 Atl. 766, it was held:

"That representation [that he had not consulted a physician, or been prescribed for by one] did not aver a condition of health, or that it was requisite or proper to consult a physician. It averred that he had not consulted a physician, or been prescribed for by a physician."

In Society v. Reutlinger, 58 Ark. 528, 25 S. W. 835, the court held:

"The obvious purpose of it [this question] was to ascertain the name of a person from whom information affecting the risk of insuring the life of Reutlinger could be derived. * * * It did not aver a condition of health, or that it was requisite or proper to request the attendance of a physician. It averred that he had never called a physician to attend him in sickness. He warranted this statement to be true, and the evidence adduced at the trial of this cause tended to prove that it was untrue,—a breach of warranty."

The court below in that case had charged the jury as it is now claimed on behalf of the plaintiff this court should declare the law to be, to wit:

"The jury are instructed that the question, 'When, and by what physician, were you last attended, and for what complaint?' as used in the application, had reference to a serious sickness or disease, such as affected seriously his constitution or health; and if the jury believe, from the evidence, that the deceased had not been, prior to the application, attended by a physician for such a serious illness, but had been treated for some temporary ailment, the jury should find for the plaintiff."

This charge to the jury was held by the supreme court to be reversible error. To the same effect, see Brady v. Association, 9 C. C. A. 252, 60 Fed. 727; Sladden v. Insurance Co., 29 C. C. A. 596, 86 Fed. 102; Hubbard v. Association, 40 C. C. A. 665, 100 Fed. 719. The importance to the company of being advised of the names and addresses of all the physicians who attended the applicant for insurance within a limited time, and thus enable it to obtain by inquiry such information as it may deem of importance to the determination of whether the risk should be accepted, is fully demonstrated by the facts in this case. Dr. Shinault, who was the only physician named in the application as having attended the assured within five years, but who did not attend him during his illness in 1899, testified that that attack of hematuria did not in any way affect the general health of the assured; while, on the other hand, Dr. Russwurm, who was the physician who had attended the assured during that illness, but whose name was not mentioned in the application, testified that: "I don't think a man is ever the same after having a severe attack [of hematuria]. It makes an inroad upon the system, so a man is not the same he was before he had any attack." He also testified that "the attack from which the assured suffered was a very severe attack of hematuria." It is very earnestly contended by learned counsel for the plaintiff that the failure of the assured to mention the fact that in September, 1899, he was treated by Drs. Russwurm and Ward is no ground for a forfeiture of the policy, as Dr. Shinault, the defendant's medical examiner, knew that fact at the time the application was made; that his knowledge was the knowledge of the company, and for this reason the company is now estopped to insist upon a forfeiture. Numerous cases have been cited by learned counsel in which the knowledge of the agent is imputed to the company, but in those cases the agent was authorized to issue the policy, while in the case at bar the medical examiner was only authorized to reduce the applicant's answers to writing, and the company issued the policy at its home office, in reliance upon the written warranty of the assured that the answers were full, true, and complete, and correctly recorded. In such case the knowledge of the agent of the company at the time the application was made cannot affect the company, especially when a copy of the application, with the answers, is attached to the policy when delivered to the assured.

A case in which the facts were almost identical with those found in this case is Foot v. Insurance Co., 61 N. Y. 571. It was there held:

"Hence, if we should treat Buhler, on whose medical examination the policy was issued, as the agent of the defendant, the fact that he at the time had knowledge of Major Foot's prior condition, obtained before, while not acting for the defendant, could make no difference with defendant's liability." Id. 576.

Nor does the rule laid down by the circuit court of appeals for this circuit in Insurance Co. v. Robison, 7 C. C. A. 444, 58 Fed. 723, 22 L. R. A. 325, and other cases like it, cited by plaintiff's counsel, apply to this case; for in those cases the assured gave correct answers, but the medical examiner wrote them down falsely. Judge

Caldwell, in delivering the opinion of the court in the Robison Case, supra, said:

"It is conceded that a breach of warranty of the truth of the applicant's answers avoids the policy without reference to the good faith of the applicant, or the materiality of the answer; but it is a grave mistake to suppose that this rule can be extended so as to hold the applicant responsible for the truth of an answer which was the result of a mistake, or an error, or blunder of the company's agent, who was specially charged by the company with the preparation of the application, and who himself dictated the answers upon a full and true statement of the facts by the applicant." 7 C. C. A. 467, 58 Fed. 729, 22 L. R. A. 330.

In the case at bar the only testimony introduced on this point was that of the medical examiner, a witness for the plaintiff, who testified as follows:

"Q. Did he (the assured) direct you to put it down (that Drs. Russwurm and Ward had attended and prescribed for him for hematuria in 1899)? A. No, sir; he didn't direct me to put it down. Q. That within five years previous to the time you made this examination he had been attended during an illness by another physician than you? Did he tell you he had been attended by Dr. Ward or Dr. Russwurm, or tell you to put that down? A. Well, I don't remember about that. Q. You have failed to mark any other name except your own. Is that correct, as he directed you to put it down? A. Well, I suppose it is. Q. Was anything stated there about Doctors Russwurm and Ward attending him in the fall of 1899? A. At the time I made this examination? Q. At the time you all made this examination. A. Well, Mr. Hornor (meaning counsel for the plaintiff), I don't remember whether anything of the kind transpired."

There is thus no evidence whatever to show that the assured made correct answers and the medical examiner failed to write them down correctly. It is claimed by the plaintiff that the false answers in an application for life insurance, which, by the terms of the application and policy, were made warranties, and a copy of them attached to the policy when delivered, will not avoid the policy if the medical examiner of the company at the time had knowledge of the true facts; but neither the diligence of the learned counsel nor a careful search made by the court, has found any authority to sustain this contention. To sustain plaintiff's contention, the court must hold the law to be that the knowledge of the medical examiner, acquired by him even before his appointment as such medical examiner, is the knowledge of the company, and relieves the applicant for insurance of the necessity of answering truthfully the questions propounded to him, and by him warranted to be true. The doctrine of estoppel, as laid down by the authorities in actions of this kind, is that, if the assured has truthfully answered the questions propounded to him, and the agent of the company, authorized to ask the questions and write the answers down, putting his own construction upon such facts, deduces therefrom an erroneous answer, which he writes down, or writes a different answer down, the assured is not estopped by his warranty from showing that he gave true answers; and, if he establishes that fact, the company is estopped from questioning the truth of the answers as written down. No such evidence has been introduced in this case. The evidence, on the contrary, is that the answers as written down by the medical examiner were as the assured gave them. All that is claimed is

that the examiner knew at the time that they were false, so far as Drs. Russwurm and Ward were concerned. This of itself will not create an estoppel in a case where the application has to be forwarded to the home office in another state, and the medical examiner has neither the power to pass upon the question whether the risk be accepted, nor anything to do with the delivery of the policy if issued. Kenyon v. Association, 122 N. Y. 248, 25 N. E. 299. It is impossible to distinguish this case from the case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934. In the case at bar, as in that case, the policy sued on, when delivered to the insured, contained a true copy of his application, including his answers as written down by the medical examiner. In the language of Mr. Justice Field:

"Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated, not only upon himself, but upon the company; and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application and of its statements. The consequences of that approval cannot after his death be avoided." Id., 117 U. S. 534, 6 Sup. Ct. 844, 29 L. Ed. 939.

See, also, Maier v. Association, 24 C. C. A. 239, 78 Fed. 571, decided by Mr. Justice Harlan; Insurance Co. v. Smith, 34 C. C. A. 506, 92 Fed. 503.

Upon the findings of facts the court's conclusion of law is that, for the reasons stated in the opinion, the defendant is entitled to a judgment.