**KEETON v. JEFFERSON STANDARD LIFE INS. CO.**

**SAME v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.**

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

Nos. 2328, 2329.

1. **Appeal and error ⬳1010(1) — District judge's findings binding on appellate court unless based on unsound reasoning or unsupported by evidence.**

Findings of district judge as to falsity and materiality of representations made by applicant for insurance are binding on Court of Appeals unless based on unsound reasoning or unsupported by evidence.

2. **Insurance ⬳291(1)—Representations as to prior state of health held material and to warrant cancellation of policies.**

Representations as to prior state of health *held* material, and when knowingly false, and the insurance companies were misled thereby, to warrant cancellation of policies.

3. **Insurance ⬳378(3)—Knowledge of insurer's agent not imputed to insurer.**

Under Code Va. 1919, § 4220, insurance solicitor is not such a representative of company that knowledge imparted to him as to applicant's prior health would be imputed to company.

4. **Insurance ⬳379(5)—Policy obtained by fraud not sustained because of agent's information or writing of answers by him.**

Policy obtained by fraudulent representations as to prior health could not be sustained because answers appearing on application were in fact written by defendant's agent rather than assured, or because of information possessed by him.

5. **Appeal and error ⬳1050(2)—Error, if any, in admitting testimony of insurer's medical director, held immaterial.**

Where representations were knowingly false and were material, error, if any, in admitting testimony of insurer's medical director that company would not have issued policy had true facts been known, was immaterial in action to cancel policy.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

Two suits, one by the Jefferson Standard Life Insurance Company against Jessie P. Keeton, in her own right; and the other by the Equitable Life Assurance Society of the United States against Jessie P. Keeton, as executrix of Joseph S. Keeton, deceased. From decrees for plaintiff in each suit, defendant appeals. Decrees affirmed.

Frank T. Sutton, Jr., and M. J. Fulton, both of Richmond, Va. (John J. Wicker, Jr., and Fulton & Wicker, both of Richmond, Va., on the brief), for appellant.

Stuart G. Christian and Wyndham R. Meredith, both of Richmond, Va. (Brooks, Hines & Smith, of Greensboro, N. C., and Alexander & Green, of New York City, on the brief), for appellees.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. These bills in equity were respectively filed by the appellee, the Jefferson Standard Life Insurance

Company, hereinafter called the Jefferson Company, in the first-named cause, and by appellee, Equitable Life Assurance Society of the United States, hereinafter called the Equitable Society, in the last-named cause, to set aside, cancel, vacate, and annul four certain life policies issued by appellees, for $5,000 each, two being issued by each company, on the life of Joseph S. Keeton.

The causes were heard together by consent, as the assured was the same in all the contracts, and the policies were issued about the same time; that is to say, by the Jefferson Company on the 29th of April, and by the Equitable Society on the 22d of May, 1921. The first-named policies were delivered June 21, 1921, and the last on the 27th of June, 1921. The assured, Joseph S. Keeton, died on the 26th of August, 1921.

Shortly after his death, the bills in these causes were filed, appellees averring that after the death of the assured they learned of certain false statements and representations made in the applications for the policies, which invalidated the same. Each company tendered the return of the premiums paid, and in the case of the Equitable Society, one of the policies payable to a beneficiary other than the assured's wife, Jessie P. Keeton, was surrendered upon return of the premium, and is not involved in these suits, leaving the contest only on a single policy for $5,000 in the Equitable Society, and two for $5,000 each in the Jefferson Company.

In his application for a policy in the Jefferson Company, the assured answered the following questions bearing on his health, and made certain stipulations, as follows:

"(a) Have you been disabled or received medical attention within the past five years? No."

"(c) Have you ever suffered from any ailment or disease of the heart, lung, etc.? No."

"E. Have you ever had rheumatism, gout, etc.? No."

"H. Have you consulted a physician for any ailment or disease not included in your above answers? No."

"(d) What physician or physicians, if any, not named in the above, have you consulted or been treated by within the last five years, and for what illness or ailment (if none so state)? None."

"I hereby agree for myself, and for any person who may have or claim any interest in any contract which may be issued on this application, that:

"First, every statement and representation hereinabove contained is material and true."

Which was signed by J. S. Keeton.

"This policy and the application therefor (parts 1 and 2), copies of which are attached hereto, constitute the entire contract, and no statement shall avoid any payment under this policy, or be used in defense of any claim hereunder unless it is contained in one of these instruments."

"No agent or other person except the president, a vice president, the secretary or an assistant secretary of the company has power on behalf of the company to make, modify or discharge this, or any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture of any of the company's rights or requirements, or to bind the company by making any promise respecting any benefits hereunder, or by accepting any representation or information not contained in the written application for this policy."

In his applications for policies in the Equitable, the assured answered the following questions bearing on his health, and made certain representations as follows:

"6. State every physician or practitioner whom you have consulted or who have treated you during the past five years. None."

"C. Have you ever been treated for any disease or disturbance of the heart or blood vessels? No."

"8. Have you ever had gout, rheumatism, tuberculosis, or syphilis? No."

"F. Have you ever had any other illness or injury not mentioned above? No."

The application to the Equitable contained the following stipulation:

"All of the foregoing answers and all those made to the society's medical examiner which are contained in part 2 hereof are true and are offered to the society as an inducement to issue the policy for which application is hereby made."

At the end of the application is the following:

"I agree that the foregoing answers shall be part of my application which shall consist of parts one and two taken together, and that the foregoing answers shall also become part of any policy contract which may be issued on the strength thereof.

"Dated at Richmond, Virginia, on the 21st day of May, 1921.

"[Signed]   J. S. Keeton.

"Witness:  P. W. Howle, M. D."

Keeton's policy with the Equitable Society also contained the following:

"*The Contract.* This policy and the ap-

plication therefor, a copy of which is indorsed hereon, or attached hereto, constitute the entire contract between the parties. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, etc." .

Complainant in each of the causes charged that the assured procured the issuance of policies by making false statements, and concealing facts respecting material matters bearing upon his health, and medical treatment previously received by him, particularly that he had not theretofore been treated for rheumatism and heart trouble, and had never had or suffered from either of said ailments, and had had no occasion for five years preceding the dates of applications for the policies to have medical attention from any physician; all of which answers the bills charged were knowingly false and fraudulent, and affected matters of vital importance looking to the issuance of policies, and but for the making of which the policies would not have been issued.

Appellant, defendant in the District Court, answered denying generally all accusations of fraud in connection with the procuring of the insurance, and insisted that the deceased was insurable, and had not theretofore within five years preceding the dates of the policies, suffered from rheumatism or other disease that would have affected his insurability; nor had he been practiced upon within the period specified for any such ailments by a physician or physicians; and that the malady from which he died was one of short duration, the first symptoms of which appeared in the month of June, 1921.

Appellant further insisted that appellees were fully advised of the ailments with which the assured was afflicted, and that its agents and representatives knew thereof, and in the light of such knowledge made full investigation as to the health of the assured; and further averred that the answers to questions propounded to the assured were not in fact his answers, but those of insurers' representatives, who took down the same.

Issues were joined upon the pleadings, and the two causes heard together and submitted to the district judge. The testimony was all taken in open court under the new equity rules, and the District Court passed its decrees on the 17th of April, 1924, holding that said policies should be declared null and void and canceled, because procured by the assured's making false statements respecting material matters leading to their issue, which the testimony clearly established.

From the decrees thus entered, these appeals were taken.

The merits of the cases, on appeal, turn so largely in our judgment upon what is the correct determination of the facts properly controlling, that we are relieved from much of the difficulty that might otherwise arise in passing upon the questions involved, by reason of the findings of fact of the learned district judge, who saw and heard the witnesses testify, and was thereby better enabled to give to their testimony the weight that properly belonged to the same. The following are excerpts from the opinion and finding of the district judge:

"The points of law, as I see them, are not really in serious doubt. I think the proper determination of the case depends upon a fair application of well-recognized principles of law to the facts. * * *

"The case, I think, presents only two questions: The question of whether or not the statements which are the basis of the suit, which were made in the answers in the examination of the applicant for the insurance, were untrue and, to that extent, false statements; and if they were, whether they were material and affected the making of the contract and the meeting of the minds of the parties. * * *

"It goes without saying that the very basis of the contract is the condition of the man's health. No insurance company could last, no insurance company could exist, unless there was a careful medical examination of the applicants for insurance. The rules which experience has taught are observed in the writing of the insurance, in the making of the contract. The undisputed evidence in this case is that the insured when he was examined by both doctors and asked the question whether or not he had consulted * * * a physician in the past five years, answered no. And when he was asked the other question whether or not he had suffered * * * certain designated diseases, including heart disease, syphilis, and rheumatism, he again replied no. The fact develops, by equally undisputed evidence, that he had consulted physicians, and not one physician, but, as stated time and time again in the argument, six physicians within a period of two years, prior to the time the application was made."

The district judge reviewed the testimony of the physicians at considerable length, bearing upon the character and extent of the assured's illness and treatment therefor, which showed, among other things, that for a period of six weeks in the summer of 1919, he was dangerously ill, under the constant

treatment of a physician for rheumatism, his temperature running from 103 to 104, and that from a year to a year and a half prior to making the applications for insurance, other doctors were invariably called in, in the absence of his regular physician, with a view of affording temporary relief; and considering the character of the symptoms, and whether the assured was suffering from rheumatic symptoms or not, the judge concluded:

"Whether they were real symptoms, or whether they were superficial symptoms, subjective or objective, I don't think it is material one way or the other, but from June in 1919 until possibly January in 1920, or within a year and two or three months of the time of this application, this insured had been constantly, or almost constantly, under the care of physicians, and, when he came to be examined by the examiner of the insurance company he concealed these facts entirely from both of those examiners, when he answered that question: 'Have you consulted or been advised by a physician within five years? No.' Now, of course, the purpose and the only purpose subserved by the question and the answer was to furnish the insurance company with the information by which, through interrogation of the doctors who had been consulted by the applicant, they might determine the extent and character, duration and insurability or curability or what not of the man's illness. And, in this case, if there had been no more than that, that is to say the matter had rested at that point, it follows, it seems to me irresistibly that the company would have been deprived by reason of an incorrect and therefore an untrue statement of facts that could not have escaped the memory of the applicant, thereby deprived, I say, of a very material part of the information necessary to enable them to determine whether or not they shall make the contract with him."

[1] These findings bind us in the action we should take, unless we are convinced, either that the judge's reasoning was not sound as to the law, or that the facts as found by him are clearly not supported by the testimony. As to many of the facts of importance, and as found by the district judge, there seems to be no real dispute, while as to others there is sharp conflict in the evidence, which, however, was solved in favor of appellees by a judge who had opportunity to determine the truthfulness of the statements of the several witnesses, heard them testify, and observed their demeanor,

intelligence, and candor while upon the stand. We should be slow to depart from the well-recognized rule of following the findings of the trial court in the circumstances, and which is supported by the almost unanimous decisions of the federal courts. Adamson v. Gilliland, 242 U. S. 350, 37 S. Ct. 169, 61 L. Ed. 356; Mason v. United States, 260 U. S. 546, 556, 43 S. Ct. 200, 67 L. Ed. 396; Espenschied v. Baum, 115 F. 793, 53 C. C. A. 368; American, etc., v. Moorehead, 226 F. 202, 141 C. C. A. 129; Westerman v. Dispatch, etc., Co., 233 F. 609, 147 C. C. A. 417; United States Grass Creek O. & G. Co., 236 F. 481, 484, 149 C. C. A. 533; Stratton v. Buller (C. C. A.) 268 F. 825; McGovern v. McClintic-Marshall Co. (C. C. A.) 269 F. 916.

So far from not adhering to the usual rule in this case, it seems to us that the District Court was clearly right in what it did, and there was no other conclusion that could fairly have been reached, having regard to the testimony in the case and the law properly applicable thereto.

[2] These were applications for the issuance of policies of insurance on the life of James S. Keeton. The policies contained a one-year noncontestable clause. Of course, before issuance of such policies, the condition of the health of the applicant was of prime importance, and where the policies became incontestable after a year, it was doubly so. Every consideration of right and justice would indicate that in such circumstances the utmost care should be observed in entering into a contract of insurance, and that only persons supposed to be in good health would be acceptable as risks. The applicant's history in respect to his health and medical treatment were most material, as bearing upon whether the insurance risk would be assumed; and at least the applicant should make full and frank explanation and answers to all inquiries throwing light upon his present and past state of health. Nothing could well be more important than the fact of previous sickness and past medical treatment, as to which the applicant was best able to furnish correct information; and anything that tended to mislead, or indicated a purpose to conceal the real truth, would serve to invalidate a policy if procured by such misleading and fraudulent conduct. In this case, the answers to the questions were of a character that the applicant could not have been mistaken about. They related directly to the state of his health regarding serious illness, and whether he had been treated at all by any physi-

cians during the period of five years previous to these inquiries, and he made positive and emphatic replies denying the existence of any sickness, or that he had received any medical treatment; all of which answers, being material and of vital importance to the transactions thus consummated, were entirely false, and deceived and misled the insurance companies into making the contracts of insurance now sought to be annulled. Authorities to sustain these views might be cited almost without number, but only a few will be given. Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 S. Ct. 676, 60 L. Ed. 1202; Hubbard v. Mutual Reserve Fund L. Ass'n, 100 F. 719, 726, 727, 40 C. C. A. 665; Talley v. Metrop. L. Ins. Co., 111 Va. 778, 69 S. E. 936; Mutual L. Ins. Co. v. Mullan, 107 Md. 457, 69 A. 385; Bryant v. Metropolitan L. Ins. Co., 147 N. C. 181, 60 S. E. 983; Schas v. Equitable L. Assur. Soc., 166 N. C. 55, 81 S. E. 1014; Caruthers v. Kansas Mut. L. Ins. Co. (C. C.) 108 F. 487, 491; Rigby v. Metropolitan L. Ins. Co., 240 Pa. 332, 87 A. 428; 4 Joyce on Insurance (2d Ed.) p. 3528; 25 Cyc. 816.

[3, 4] We have given much consideration to appellant's position that the answers, made by the assured to the several questions relied on to annul the policies, were written by representatives of the company, and not the assured, and that the latter should not be bound thereby; that the companies had knowledge as to the health of the assured, information in that respect given to their agents being imputed to them.

We have examined carefully the Virginia statutes, Code, § 4220, relied on in support of the proper interpretation to be placed upon contracts of insurance, as we have the many authorities, state and federal, cited by appellant. In the view we take, the authorities do not call for a conclusion different from the one we have arrived at, under the particular facts and circumstances of this case. There is nothing in the testimony to warrant the suggestion that answers, made by the assured to questions propounded to him by the medical examiners, were written other than as actually made by the applicant; and it is quite clear that within the provisions of the policy, the insurance solicitor or canvasser securing the same was without authority to issue policies or to make valid contracts for and binding on the company, and was not such a representative of the company as that knowledge imparted to him would be imputed to the company.

These positions respecting answers to questions made by the agent of the company, instead of the assured, and the imputation of knowledge on the part of the company because of information to its representative, are each predicated upon the transaction having been entered into in good faith, and that the same is otherwise free from the taint of fraud and imposition on the part of the assured; and when it once appears that such fraudulent conditions exist respecting material matters entering into the making of the contract, they become immaterial, and a contract so secured must fall. Mutual L. Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 S. Ct. 676, 60 L. Ed. 1202, supra; New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 529, 533, 534, 6 S. Ct. 837, 29 L. Ed. 934; United States L. Ins. Co. v. Smith, 92 F. 503, 34 C. C. A. 506; Caruthers v. Kansas Mutual L. Ins. Co. (C. C.) 108 F. 487, 492, 494, supra; North American F. Ins. Co. v. Throop, 22 Mich. 146, 168, 7 Am. Rep. 638; Gallant v. Metropolitan Life Ins. Co., 167 Mass. 77, 44 N. E. 1073; Roe v. National Life Ins. Co., 137 Iowa, 696, 115 N. W. 500, 17 L. R. A. (N. S.) 1144; Sanders v. Cooper, 115 N. Y. 279, 22 N. E. 212, 5 L. R. A. 638, 12 Am. St. Rep. 801; Lorie v. Connecticut Mutual L. Ins. Co., 15 Fed. Cas. 891.

We are forced to the conclusion that the assured, in making the answers he did, in respect to his health and medical treatment he had received, fraudulently made false representations in regard to material matters, and concealed and withheld the real facts, which, if known, would have resulted in the applications being refused and the contracts of insurance not entered into.

[5] Appellant insists in the seventh assignment of error that the court erred in allowing the witness Dr. Alfred Billings, assistant medical director for the Equitable Society, to testify as to whether the company would have issued the policy had the true facts in respect to the transaction been known. The ruling of the court complained of does not seem to us material, in the light of the conclusion we have reached.

The decrees of the District Court entered separately in the two cases will be affirmed, with costs.

Affirmed.